CHI-HUNG A. CHAN (SBN 104289)
LAEL D. ANDARA (SBN 215416)
MICHAEL D. KANACH (271215)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:  (650) 364-8200
Facsimile:  (650) 780-1701
Email:  cchan@rmkb.com
         blyle@rmkb.com

Attorneys for Plaintiff
AI-DAIWA, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AI-DAIWA, LTD.,<br><br>  Plaintiff,<br><br>v.<br><br>APPARENT, INC., a Delaware Corporation; APPARENT ENERGY, INC., a Delaware Corporation; APPARENT SOLAR, INC., a Delaware Corporation; APPARENT SOLAR INVESTMENTS, LLC, a Hawaii limited liability company; XSLENT, LLC, a Delaware limited liability company; XSLENT ENERGY TECHNOLOGIES, LLC, a Delaware limited liability company; and DOES 1-10 inclusive,<br><br>  Defendants. | CASE NO. CV13-4156 YGR<br><br>**PLAINTIFF AI-DAIWA, LTD'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULES 12(b)(3); 12(b)(6) [Docket No. 29]**<br><br>**Date:** February 25, 204<br>**Time:** 2:00 p.m.<br>**Courtroom:** 5 |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| | A. Procedural Background | 1 |
| | B. The Advanced Agreement | 1 |
| | C. The Addendum | 3 |
| | D. The Purchase Orders | 4 |
| II. | ARGUMENT | 5 |
| | A. AI-Daiwa is Not a Party to the Advanced Agreement | 5 |
| | B. The Addendum Provides that AI-Daiwa is Subject to the Terms of the Advanced Agreement Regarding Performance of the Purchase Orders, Not Enforcement of the Advanced Agreement | 6 |
| | C. The Indemnity Provision in Number 3 of the Addendum Further Clarifies Apparent's Intent That AI-Daiwa Not Be a Party to the Advanced Agreement | 8 |
| | D. With Respect to AI-Daiwa, Apparent Cannot Enforce the Choice of Law and Mediation Requirements in the Advanced Agreement to Which AI-Daiwa is Not a Party | 9 |
| III. | CONCLUSION | 10 |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# TABLE OF AUTHORITIES

Page

## CASES

*Brinton v. Bankers Pension Services, Inc.* (1999)
   76 Cal.App.4th 550, 558 .................................................................................................. 5

*Britton v. Co-op Banking Group*,
   4 F.3d 742, 744 (9th Cir.1993) ........................................................................................ 10

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*,
   68 Cal.App.4th 445, 473 (1998) ...................................................................................... 8

*City of Hope National Medical Center v. Genentech, Inc.* (2008)
   43 Cal.4th 375, 395 ......................................................................................................... 7

*County of Marin v. Assessment Appeals Bd. of Marin County*,
   64 Cal.App.3d 319, 324–325 (1976) ................................................................................ 8

*E.E.O.C. v. Goodyear Aerospace Corp.*,
   813 F.2d 1539, 1543, n. 2 (9th Cir.1987) ......................................................................... 9

*Kennecott Corp. v. Union Oil Co. of California*,
   196 Cal.App.3d 1179, 1189 (1987) .................................................................................. 7

*Lorber Industries of California v. Los Angeles Printworks Corp.*,
   803 F.2d 523, 525 (9th Cir.1986) ..................................................................................... 9

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151, 1165-66 (9th Cir. 1996) ............................................................................ 9

*Santisas v. Goodin*,
   17 Cal.4th 599, 608 (1998) ............................................................................................... 6

*Sateriale v. R.J. Reynolds Tobacco Co.* (9th Cir. 2012)
   697 F3d 777, 784–792 ..................................................................................................... 5

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777, 785 (9th Cir. 2012) .................................................................................... 5

*Sherman v. British Leyland Motors, Ltd.*,
   601 F.2d 429, 440, n. 13 (9th Cir.1979) ......................................................................... 10

*Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.*,
   74 Cal.App.4th 1232, 1242 (1999) ................................................................................... 7

*Titan Corp. v. Aetna Casualty and Surety Co.*,
   22 Cal.App.4th 457, 473–474 (1994) ............................................................................... 8

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**TABLE OF AUTHORITIES**
(continued)

Page

*Troyk v. Farmers Group, Inc.* (2009) ............................................................................................... 5

**STATUTES**

Cal. Civil Code section 1636 ........................................................................................................... 6

Cal. Civil Code section 1641 ........................................................................................................... 8

Cal. Civil Code section 1647 ........................................................................................................... 6

Civil Code section 1644 ................................................................................................................... 6

Federal Rules of Civil Procedure, Rules 12(b)(3) ........................................................................... 1

**OTHER AUTHORITIES**

1 Witkin, Summary of California Law, Contracts §§ 1–2 ............................................................... 5

*Restatement (Second) of Contracts*, § 317(1) (1981) .................................................................... 10

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

AI-Daiwa, Ltd. (AI-Daiwa) hereby opposes Defendants' <u>Third</u> Motion to Dismiss First Amended Complaint. (Docket No. 29.)[1] On October 9, 2013, Defendants Apparent Inc., Apparent Energy, Inc., Apparent Solar Inc., and Xslent Energy Technologies, LLC (collectively "Defendants") filed their <u>first</u> Motion to Dismiss AI-Daiwa's First Amended Complaint (Motion). (Docket No. 7.) Defendants filed a <u>third</u> Motion to Dismiss on January 13, 2014. (Docket No. 29.) AI-Daiwa hereby opposes Defendants' third Motion to Dismiss. (Docket No. 29).[2]

# I.
# INTRODUCTION

Defendants' argument relies on the fiction that AI-Daiwa is subject to the agreement entered into between Apparent and Advanced Innovations and all the terms thereof. Defendants are aware that AI-Daiwa and Advanced Innovations are separate legal entities. In fact, Defendants provided an Addendum for AI-Daiwa to sign related to Purchase Orders and specified that AI-Daiwa was subject only to the terms of the Advanced Agreement related to <u>the performance</u> of the purchase order, even providing that Advanced Innovation would indemnify Apparent for any breach by AI-Daiwa.

## A. Procedural Background

On November 18, 2013, the parties stipulated to continuing the hearing and briefing schedule so that mediation could occur prior to the remaining hearing and briefing. (Docket No. 24.) On November 19, 2013, the Court requested that Defendants file a Consolidated Motion to Dismiss on or before January 13, 2014. (Docket No. 25.) Pursuant to the Docket No. 25, Defendants filed a consolidated Motion to Dismiss on January 13, 2014. (Docket No. 29.)[3]

## B. The Advanced Agreement

On July 25, 2011, Advanced Innovations, U.S.A. L.L.C. ("Advanced") and Apparent Energy Inc., ("Apparent") entered into a "CUSTOMER SUPPLY CHAIN AGREEMENT." ("Advanced

---

[1] Apparent Inc., is the parent company of Apparent Energy, Inc., Apparent Solar Inc., and Xslent Energy Technologies, LLC, and Apparent Inc. is the sole member of Apparent Solar Investments (II), LLC.
[2] The parties have scheduled mediation which is set to occur on January 28, 2009.
[3] Defendants previously filed a Motion to Dismiss (Docket No. 7) and re-noticed its Motion to Dismiss (Docket No. 17.) As set forth in Plaintiff's Opposition to the previously filed Motion, Defendants did not properly serve AI-Daiwa with unredacted copies of the original exhibits filed under seal or newly filed exhibits in a timely manner in response to Plaintiff's request and pursuant to Local Rules. (See, Docket No. 18.)

RC1/7272667.1/RS - 1 - PLAINTIFF AI-DAIWA, LTD'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DKT NO. 29]
CV13-4156 YGR

Agreement") *Exhibit A to Defendants' Consolidated Motion to Dismiss Docket No. 29-1, pages 7-21 of 29.* The object of the Advanced Agreement was the manufacture of certain component parts in solar energy systems sold by Apparent. The Advanced Agreement sets forth obligations of the parties, minimum order requirements, delivery schedules, quality specifications, pricing payment and delivery, warranties and other terms and conditions regarding the performance of purchase orders. The Advanced Agreement makes it clear what sections of the Advanced Agreement relate to the performance of the products, as set forth in the definition of "Specifications." "Specifications" was defined in Section 1 of the Advanced Agreement as follows:

> "Specifications" means Apparent Energy's requirements for the construction, performance, and appearance of the Product, as described in Schedule B and as may be updated from time to time, including but not limited to: (i) detailed electrical, mechanical, testing as described in Schedule C, performance and appearance specifications for Product, (ii) the BOM [defined as Apparent Energy's bill of materials], (iii) tooling specifications, along with a detailed description of the operation thereof, (iv) artwork drawings, (v) Component specifications, (vi) AVL [defined as Apparent Energy's approved vendor list], (vii) labeling and packaging requirements as described in Schedule D.

Pursuant to the Advanced Agreement, Apparent agreed to purchase a minimum of 200,000 units of Product from July 25, 2011 to July 25, 2014. *4 and 13.1.* Apparent agreed to be financially responsible for all raw materials purchased. *5.1 (c).* Advanced provided a 24 month warranty on the products. *9.1 (b).* Apparent agreed to make payment for products within 60 days following transfer of products to a shipping carrier at a designated port. *9.1 (a).* Apparent agreed to an interest rate of 8% per annum on late payments to Advanced. *9.1 (d.)* Apparent would be deemed to have accepted the products ten calendar days after receipt of the product, unless it deemed as nonconforming within that period. *9.3 (b).*

In the event that Advanced and Apparent had any disputes related to this Advanced Agreement, Advanced and Apparent agreed to the following Choice of law provision in Paragraph 16:

> This Agreement and the performance of transactions under this Agreement shall be governed by the laws of the State of California, excluding its choice of law rules. Should mediation, or suit be filed to enforce any claim or demand made pursuant to the terms of this Agreement (including its attachments), it shall be brought in Santa Clara County Superior Court and the parties submit to the venue and jurisdiction of this Court waiving all objections.

Despite the fact that AI-Daiwa Ltd. ("AI-Daiwa") was not a party to the July 25, 2011 Advanced Agreement as executed, Defendants argue that AI-Daiwa's First Amended Complaint (FAC) should be dismissed based on the choice of law provision in the Advanced Agreement entered into between Apparent and Advanced Innovations. Defendants even – incorrectly – assert in DeSouza's declaration that the Advanced Agreement was "entered into by Plaintiff and Apparent, Inc. effective July 21, 2011." (Docket No. 29-1: 2:19-21.) This incorrect assertion is stated two paragraphs between DeSouza declares that AI-Daiwa requested that the July 2011 Purchase Order be re-issued to AI-Daiwa Ltd. (Docket No. 29-1: 2:27-3:3.) and that Apparent, Advanced, and AI-Daiwa entered into **Addendum One** (discussed below) because Apparent was concerned that the terms of the Contract (related to the performance of the purchase order) would not apply to AI-Daiwa, a separate legal entity.

Defendants argue that the Addendum No. One to Customer Supply Chain Agreement makes AI-Daiwa, Ltd. subject to <u>all</u> the terms of the Advanced Agreement, particularly the aforementioned choice of law provision and mediation requirements. Again, AI-Daiwa contends that AI-Daiwa is not a party to the Advanced Agreement, nor subject to any provisions regarding <u>enforcement</u> of the Advanced Agreement entered into between Apparent Energy and Advanced Innovations. A reading of the Addendum makes this clear.

## C. The Addendum

On December 5, 2011, AI-Daiwa Ltd. ("AI--Daiwa") entered into an "ADDENDUM NO. ONE TO CUSTOMER SUPPLY CHAIN AGREEMENT" ("Addendum") with Apparent limited to the performance of a single purchase Order for 47,000 units. *Exhibit C to Defendants' Consolidated Motion to Dismiss Docket No. 29-1, pages 26-27 of 29.* Pursuant to the Addendum, the parties defined their relationships as follows:

> 2. AI-Daiwa, Ltd., agrees to be bound by the terms of the Agreement for all purposes ***applicable for the performance of the July 7, 2011 Purchase Order***. No rights other than as specified in the Agreement ***for the performance of the July 7, 2011 Purchase Order*** are conferred upon AI-Daiwa by this Addendum.

By the language drafted, by Apparent's own attorney, the scope of the obligations and rights of AI-Daiwa are limited to the performance of the July 7, 2011 Purchase order, and not the

1  whole Advanced Agreement. The Choice of Law provision, like several of the other provisions
2  in the CSCA, are not applicable to AI-Daiwa, nor can they reasonably be imputed or implied.
3  The Addendum specifically confirms that fact:

> 4. This ***Addendum is limited in scope and does not alter or replace any term or condition of the Agreemen***t or its attachments ***unless specifically addressed***. Specifically, the Agreement's substantive provisions ***including but not limited to choice of law*** and venue provision are not modified or superseded by this Addendum.

The foregoing language indicates, on its face, that the choice of law and venue provisions that apply to Apparent and Advanced in the Advanced Agreement are not altered or expanded by the Addendum. This is emphasized by the fact that any such expansion to AI-Daiwa, Ltd., must be ***specifically addressed***. The Choice of law provision is not specifically addressed to be expanded to apply to AI-Daiwa, Ltd., much like Apparent would argue that the minimum purchase of 200,000 units by July 21, 2014, purchase provision is not a right of AI-Daiwa.

Apparent's attempt to choose certain terms of the Advanced Agreement <u>unrelated</u> to "the performance" of the purchase order (e.g., choice of law and venue) to apply to AI-Daiwa, while ignoring other terms of the Advanced Agreement, also unrelated to the performance of the purchase order (e.g., 200,000 unit minimum), is unsupported by fact or law.

Any waiver of venue or jurisdiction must be express and unambiguous. The Addendum is clearly limited to issues regarding the performance of the July 7, 2011 Purchase Order, and does not encompass the Choice of Law provision that by its own terms would have been specifically addressed if applicable.

### D. **The Purchase Orders**

Two purchase orders were signed by Apparent. The first, Apparent signed on July 7, 2011, with Advanced Innovations. *Exhibit B to Defendants' Consolidated Motion to Dismiss Docket No. 29-1, pages 23-24 of 29.* The second, Apparent signed on December 20, 2011, with AI-Daiwa, in conjunction with Addendum One. *Exhibit C to Defendants' Consolidated Motion to Dismiss Docket No. 29-1, pages 28-29 of 29.* The second purchase order was attached to Addendum One.

# II.
# ARGUMENT

## A. AI-Daiwa is Not a Party to the Advanced Agreement

A breach of contract claim necessarily begins with a contract. *Troyk v. Farmers Group, Inc.* (2009) 171 CA4th 1305, 1352, 90 CR3d 589, 628; on contract formation generally, see *Sateriale v. R.J. Reynolds Tobacco Co.* (9th Cir. 2012) 697 F3d 777, 784–792; see also 1 Witkin, Summary of California Law, Contracts §§ 1–2. "A bilateral contract consists of mutual promises made in exchange for each other by each of the two contracting parties." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 785 (9th Cir. 2012), citing *Sully–Miller Contracting Co. v. Gledson/Cashman Constr., Inc.*, 103 Cal.App.4th 30, 126 Cal.Rptr.2d 400, 403 (2002) (internal quotation marks omitted). Both sides of the bargain must have made promises. *Id*. Defendants concede that the Advanced Agreement was entered into between Apparent and Advanced Innovations USA, LLC. (Docket No. 29, 2:17-18). AI-Daiwa was not a party to the Advanced Agreement.

Further, AI-Daiwa was not a third-party beneficiary to the Advanced Agreement. *Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 558 (A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears from the terms of the agreement.). Nowhere in the Advanced Agreement is AI-Daiwa mentioned. There is no evidence that the Advanced Agreement was entered on behalf of AI-Daiwa.

The fact that AI-Daiwa is not a party to the Advanced Agreement is further evidenced by the fact that Apparent felt the need to draft an Addendum to the Advanced Agreement, rather than simply re-issue a purchase order to AI-Daiwa. (Docket No. 29-1: 2:27-3:3.) Defendants further acknowledge that AI-Daiwa was not a party to the Advanced Agreement through the terms of the Addendum (discussed below), as well as the fact that Apparent contends that AI-Daiwa and Advanced Innovation are separate legal entities and that AI-Daiwa is a "Hong Kong-based joint venture" between Advanced Innovations, USA, LLC and Daiwa, Ltd. (Docket No. 29, 3:7-10; Docket No. 29-2: 1:26-2:3.) In contrast, Defendants contend that Advanced Innovations, USA,

1  LLC, with whom Apparent entered into the Advanced Agreement, is an Alabama company.
2  (Docket No. 29-2: 1:26-2:3.)

### B. The Addendum Provides that AI-Daiwa is Subject to the Terms of the Advanced Agreement Regarding Performance of the Purchase Orders, Not Enforcement of the Advanced Agreement

"The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." Civil Code section 1644. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation. Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." *Santisas v. Goodin*, 17 Cal.4th 599, 608 (1998). (internal citations omitted.)

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civil Code section 1636. "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Cal. Civil Code section 1647. AI-Daiwa entered into an Addendum with Apparent and Advanced related to a July 2011 purchase order that was to be re-issued to AI-Daiwa for AI-Daiwa to manufacture products for Apparent subject to the specifications set forth in a separate agreement. It is logical that Apparent would want AI-Daiwa to create products pursuant to the specifications set forth in the Advanced Agreement which Apparent previously entered into with Advanced.

Addendum One states what parts of the Advanced Agreement apply to AI-Daiwa:

> 2.  AI-Daiwa, Ltd., agrees to be bound by the terms of the Agreement for all purposes *applicable <u>for the performance</u> of the July 7, 2011 Purchase Order*…

///
///
///

Addendum One further states what parts of the Advanced Agreement do <u>not</u> apply to AI-Daiwa:

> 2. … No rights other than as specified in the Agreement ***for the performance of the July 7, 2011 Purchase Order*** are conferred upon AI-Daiwa by this Addendum.

Apparent and AI-Daiwa's intent at the time of entering into the Addendum One is a question for the jury. *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 ("Juries are not prohibited from interpreting contracts. Interpretation of a written instrument becomes solely a judicial function only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence. But when, as here, ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact that may properly be resolved by the jury." footnote and internal citations omitted.)

Further, the fact that AI-Daiwa performed pursuant to the terms of the Advanced Agreement related to the performance of the purchase order – namely, the specifications – shows AI-Daiwa's intent in entering into the Addendum. *Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.*, 74 Cal.App.4th 1232, 1242 (1999) ("In construing contract terms, the construction given the contract by the acts and conduct of the parties with knowledge of its terms, and before any controversy arises as to its meaning, is relevant on the issue of the parties' intent."). "The conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions." *Kennecott Corp. v. Union Oil Co. of California*, 196 Cal.App.3d 1179, 1189 (1987).

Here, Defendants concede that AI-Daiwa performed under the Addendum, purchase order, and subject to the specifications set forth in the Advanced Agreement, except for the allegation that eleven (11) products out of the approximately 4,265 units delivered to and accepted by Apparent did not conform to the requirements and specification, prior to Apparent providing notice to AI-Daiwa that it would refuse to accept any additional products unless further requirements (not set forth in the Addendum One or Advanced Agreement) were performed by

AI-Daiwa or a third party. (Docket No. 29-2, 2:7-3-2.) This is evidence that AI-Daiwa performed pursuant to the Addendum as drafted and executed.

### C. The Indemnity Provision in Number 3 of the Addendum Further Clarifies Apparent's Intent That AI-Daiwa Not Be a Party to the Advanced Agreement

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civil Code section 1641. Contracts should be construed as a whole, with each clause lending meaning to the others. Contractual language should be interpreted in a manner that gives force and effect to every clause rather than to one that renders clauses nugatory, inoperative, or meaningless. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal.App.4th 445, 473 (1998); *Titan Corp. v. Aetna Casualty and Surety Co.*, 22 Cal.App.4th 457, 473–474 (1994) "[T]he contract must be construed as a whole and the intention of the parties must be ascertained from the consideration of the entire contract, not some isolated portion." *County of Marin v. Assessment Appeals Bd. of Marin County*, 64 Cal.App.3d 319, 324–325 (1976).

When numbered paragraph 2 of Addendum One is read in conjunction with the other numbered sections of Addendum One, the purpose and intent of Apparent is more evident. Numbered paragraph 3 of the Addendum One reads:

> 3. AI [Advanced Innovations, USA, LLC] agrees to hold harmless and indemnify Apparent Energy from and for all liability, damages, or loss arising from AI-Daiwa Ltd's, or Daiwa's failure to perform. In addition, AI agrees to be solely responsible for any failure by AI-Daiwa Ltd., or Daiwa's failure to perform any term of this Addendum or the Agreement. These provisions of paragraph 2, supersede any contrary term in the Agreement.

If Apparent felt it could enforce <u>all</u> the terms of the Advanced Agreement against AI-Daiwa, Apparent would not have needed to draft a one-sided indemnity section, whereby Advanced would indemnify Apparent for all loses by AI-Daiwa or Daiwa, neither of which are a party to the Advanced Agreement.

Further, numbered paragraph 4 of the Addendum specifically references the Advanced Agreement's continuing validity and enforceability for the parties to that Advanced Agreement.

///

///

Numbered paragraph 4 of the Addendum One reads:

4. This ***Addendum is limited in scope and does not alter or replace any term or condition of the Agreement*** or its attachments ***unless specifically addressed.*** Specifically, the Agreement's substantive provisions ***including but not limited to choice of law*** and venue provision are not modified or superseded by this Addendum.

These numbered paragraphs provide further evidence that AI-Daiwa is not subject to the entire Advanced Agreement entered into between Apparent and Advanced. If Apparent chose to have <u>all</u> the terms and conditions of the Advanced Agreement apply to AI-Daiwa, Apparent could have stated that intent in the Addendum – rather than stating the opposite ("This Addendum is limited in scope… unless specifically addressed."). Further, Apparent could have entered into a full agreement with AI-Daiwa, rather than an Addendum.

If Apparent wanted to make AI-Daiwa subject to the choice of law provisions, Apparent could have drafted that intent – rather than generally stating that the choice of law and venue provision in the Advanced Agreement entered into between Apparent and Advanced – which only applies to Apparent and Advanced - was not altered by the Addendum. Apparent should not be allowed to choose which provisions of the Advanced Agreement apply without providing any legal or factual basis for its argument.

D. <u>With Respect to AI-Daiwa, Apparent Cannot Enforce the Choice of Law and Mediation Requirements in the Advanced Agreement to Which AI-Daiwa is Not a Party</u>

"A choice-of-law clause, like an arbitration clause, is a contractual right and generally may not be invoked by one who is not a party to the contract in which it appears." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1165-66 (9th Cir. 1996) (citing *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir.1993)). In the analogous right to compel arbitration, that contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right. *Lorber Industries of California v. Los Angeles Printworks Corp.*, 803 F.2d 523, 525 (9th Cir.1986). An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration. *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543, n. 2 (9th Cir.1987).

If the parties to the contract had no intention to benefit a third party, that third party has no

rights under the contract. *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 440, n. 13 (9th Cir.1979) (citing *Martinez v. Socoma Cos., Inc.*, 11 Cal.3d 394, 113 Cal.Rptr. 585, 521 P.2d 841 (1974)). "[T]he law requires a showing that the parties to the contract intended to benefit a third party." *Britton*, 4 F.3d at 745. AI-Daiwa is not a third-party beneficiary to the Advanced Agreement which was entered into in July, five months before the December Addendum One was signed.

Additionally, general contract principles dictate that to prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts. *See generally Restatement (Second) of Contracts*, § 317(1) (1981) ("[a]n assignment of a right is a manifestation of the assignor's intention to transfer it"); *Id.* at § 324 ("[i]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person"). Here, the parties make it clear in Paragraph 14 of the Advanced Agreement that they do not want the rights or obligations of the Advanced Agreement to be assigned without express written consent of the other party. Since number 2 of the Addendum makes it clear that the parties do not intend to assign <u>all</u> rights or obligations, rather only those terms of the Advanced Agreement related to the performance of the purchase order, the choice of law provision does not apply to AI-Daiwa.

Therefore, Apparent cannot enforce all the terms of the Advanced Agreement against AI-Daiwa, excepting those terms specifically related to the specifications and requirements of the purchase orders as specifically set forth in the Addendum. Likewise, since AI-Daiwa is not a party to the Advanced Agreement between Apparent and Advanced, AI-Daiwa cannot enforce the Advanced Agreement and all its terms against Apparent, including the choice of law and mediation requirements of Paragraph16.

### III.
### CONCLUSION

Defendants' second Motion to Dismiss should be denied on the basis that it cites to language from an agreement to which AI-Daiwa is not a party. AI-Daiwa cannot be held to the terms and conditions of a contract of which AI-Daiwa is not a party.

As stated in AI-Daiwa's previous two Oppositions to Defendants' efforts to dismiss this case, the parties are attempting to mediate this matter with mediation scheduled to occur on January 28, 2014.

Dated: January 22, 2014

ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/ *Lael D. Andara*
CHI-HUNG A. CHAN
LAEL D. ANDARA
MICHAEL D. KANACH
Attorneys for Plaintiff AI-DAIWA, LTD.