1  CHI-HUNG A. CHAN (SBN 104289)
   LAEL D. ANDARA (SBN 215416)
2  MICHAEL D. KANACH (SBN 271215)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  1001 Marshall Street, Suite 500
   Redwood City, CA  94063-2052
4  Telephone:    (650) 364-8200
   Facsimile:    (650) 780-1701
5  Email:        cchan@rmkb.com
                 landara@rmkb.com
6                mkanach@rmkb.com

7

8  Attorneys for Plaintiff
   AI-DAIWA, LTD.

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11

12
   AI-DAIWA, LTD.,                      CASE NO.  CV13-4156 VC
13
              Plaintiff,                **NOTICE OF MOTION AND MOTION TO**
14                                       **DISMISS DEFENDANTS'**
       v.                               **COUNTERCLAIMS**
15
   APPARENT, INC., a Delaware           **Date:        May 22, 2014**
16 Corporation; APPARENT ENERGY,        **Time:        1:30 p.m.**
   INC., a Delaware Corporation;        **Courtroom:   4**
17 APPARENT SOLAR, INC., a Delaware
   Corporation; APPARENT SOLAR
18 INVESTMENTS, LLC, a Hawaii limited
   liability company; XSLENT, LLC, a
19 Delaware limited liability company;
   XSLENT ENERGY TECHNOLOGIES,
20 LLC, a Delaware limited liability
   company; and DOES 1-10 inclusive,
21
              Defendants.
22

23

24

25

26

27

28

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*

**NOTICE OF MOTION AND MOTION TO**
                                                  **DISMISS - CV13-4156 VC**

1

## TABLE OF CONTENTS

2

Page

3 I.    NOTICE OF MOTION ..................................................................................1

4 II.   INTRODUCTION .........................................................................................1

III.  PROCEDURAL HISTORY ...........................................................................2

5 IV.   FACTUAL BACKGROUND .........................................................................3

6      A.    Apparent's Technology ......................................................................3

7      B.    In 2011, the Parties Entered Into Contracts .....................................3

       C.    In 2012, AI-Daiwa Manufactured Products and Delivered Them to
8            Apparent .............................................................................................4

9      D.    By the End of 2012, Apparent Owed AI-Daiwa at Least $200,000 for
             Products Manufactured and Delivered to Apparent ..........................5

10     E.    In January 2013, AI-Daiwa Delivered the Final Shipment to Apparent ...............5

11     F.    At An Unspecified Time, Apparent Discovered Some Products Had
             Unspecified Defects............................................................................5

12     G.    In July and August 2013, After Delivery of the Final Shipment in January
             2013, Apparent's Demanded Products Be Tested by a Third Party ....................7

13     H.    At an Unspecified Time, Apparent Alleges AI-Daiwa Falsified Testing
14           Reports ...............................................................................................9

V.    ARGUMENT .................................................................................................9

15     A.    Standard of Review of Motion to Dismiss ........................................9

16     B.    Heightened Standard for Claims Alleging Fraud ..............................10

17     C.    Elements of Fraud Cause of Action...................................................11

             1.    Neither of Apparent's Fraud Allegations Satisfy the Particularity
18                 Requirements ..........................................................................11

19                       a.    Apparent Fails to Allege Any Misrepresentations Were
                               Made Prior to the Formation of the December 2011
20                             Amendment to Agreement..............................................12

21                       b.    Apparent Fails to Plead with Particularity the Claims What
                               Test Results AI-Daiwa Allegedly Falsified ...................13

VI.   CONCLUSION................................................................................................15

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7423517.1/RS

i

**NOTICE OF MOTION AND MOTION TO
DISMISS - CV13-4156 VC**

**TABLE OF AUTHORITIES**

**Page**

CASES

*Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.,*
   69 F.3d 381, 385 (9th Cir.1995) ...................................................................................9

*Ashcroft v. Iqbal,*
   556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)........................................9

*Behnke v. State Farm Gen.Ins. Co.* (2011) ..........................................................................12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (*"Twombly"*)....................10, 11

*Branch v. Tunnell,*
   14 F.3d 449, 453 (9th Cir.1994) ...................................................................................4

*Conley v. Gibson,*
   355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 ...........................................................10

*Conley v. Gibson,*
   supra, 355 U.S. at 45–46...............................................................................................12

*Cooper v. Pickett,*
   137 F.3d 616, 627 (9th Cir.1997) .................................................................................10

*Erickson v. Pardus,*
   551 U.S. 89, 93, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)....................................9

*Fecht v. The Price Co.,*
   70 F.3d 1078, 1080 n. 1 (9th Cir.1995), cert. denied, 517 U.S. 1136, 116 S.Ct. 1422,
   134 L.Ed.2d 547 (1996).................................................................................................4

*Ileto v. Glock. Inc.,*
   349 F.3d 1191, 1199–1200 (9th Cir.2003) ...................................................................9

*In re GlenFed,*
   42 F.3d at 1547–48 .......................................................................................................14

*In re Gupta Corp. Sec. Litig.,*
   900 F.Supp. 1217, 1228 (N.D.Cal.1994) .....................................................................10

*In re Stac Electronics Sec. Litig.,*
   89 F.3d 1399, 1405 n. 4 (9th Cir.1996) ........................................................................4

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3
*Odom v. Microsoft Corp.,*
   486 F.3d 541, 554 (9th Cir.2007) ........................................................................11
4

5
*Oestreicher v. Alienware Corp.,*
   544 F.Supp.2d 964, 968 (N.D.Cal.2008) *aff'd,* 322 F. App'x 489 (9th Cir.2009) ..................11

6
*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097, 1107 (9th Cir. 2003) ....................................................................10
7

8
*Wool v. Tandem Computers, Inc.,*
   818 F.2d 1433, 1439 (9th Cir.1987) ....................................................................10
9

10
OTHER AUTHORITIES

11
5 Witkin, Summary of California Law, Torts § 807....................................................13

12
5 Witkin, Summary of California Law, Torts § 767....................................................11

13
Fed.R.Civ.P. Rule 9(b) ...............................................................................passim

14
Fed.R.Civ.P. Rule 12(b)(6)...............................................................1, 4, 9, 10

15
Rest.2d Torts § 526...................................................................................13

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

iii

**NOTICE OF MOTION AND MOTION TO
DISMISS - CV13-4156 VC**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**I.**
**NOTICE OF MOTION**

Plaintiff and Cross-Defendant AI-Daiwa, Ltd. (AI-Daiwa) hereby gives notice that on

May 22, 2014, at 1:30 p.m. before Honorable Vince Chhabria in Courtroom 4 of the above

referenced Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, AI-Daiwa will

seeks an Order dismissing the second cause of action of Fraud-Misrepresentations/Concealment

brought by Counterclaimants Apparent Inc., Apparent Energy Inc., Apparent Solar Inc., Xslent

Energy Technologies, LLC, and Apparent Solar Investments (II), LLC erroneously sued herein as

Apparent Solar Investments, LLC (collectively, Apparent) in Apparent's Counterclaims. (Docket

No. 37.)  This Motion to Dismiss is brought on the grounds that Apparent fails to state a claim for

relief under Fed.R.Civ.P. Rule 12(b)(6) and fails to allege fraud claims with particularity pursuant

to Fed.R.Civ.P. Rule 9(b).

**II.**
**INTRODUCTION**

The fundamental ambiguity in Apparent's Counterclaims is Apparent's failure to state

whether the tests and specifications alleged in the Counterclaims are those from 2011 when the

agreement was made or from 2013, after Apparent received its last shipment and after Apparent

allegedly determined the root cause of the reason its products did not work in the field.  Apparent

does not meet the pleading requirements for a fraud cause of action, specifically because

Apparent fails to allege whether the tests performed in 2013 were the same tests as Apparent

required pursuant to the agreement entered into in 2011.

To summarize, Apparent contracted with AI-Daiwa in 2011 to manufacture a product

designed by Apparent.  Apparent provided AI-Daiwa with specifications and testing protocols

and procedures, as set forth in the agreement (the "2011 Protocols").  In 2012, AI-Daiwa

manufactured the products to Apparent's specifications in the 2011 Protocols, tested the products

and delivered the test results to Apparent per the 2011 Protocols, and then delivered products to

Apparent.  Apparent failed to make timely payments in 2012, later alleging that some of the

products were defective.  After AI-Daiwa made its last delivery in January 2013, Apparent

- 1 - **NOTICE OF MOTION AND MOTION TO DISMISS - CV13-4156 VC**

demanded third-party testing to avoid making payment.  In 2013, Apparent demanded new tests and specifications based on "remedial measures" (the "2013 Protocols").  To the extent Apparent is asserting in its Counterclaims that the 2011 Protocols are the same as the "re-test" Apparent requested pursuant to the 2013 Protocols, Apparent should plead that allegation with the required particularity required under Fed.R.Civ.P. 9(b).  Otherwise, to assert that a party could knowingly make false representations in 2011 or 2012 regarding new testing requirements and specifications pursuant to the 2013 Protocols, is beyond reason.

Apparent combines two separate allegations of fraud into their second cause of action, both of which fail to meet the heightened pleading standards of Fed.R.Civ.P. Rule 9(b).  First, Apparent alleges that AI-Daiwa committed fraud when it entered into the Agreement in 2011, simply cloaking breach of contract allegations into a fraud cause of action.  For example, Paragraph 25 states: "On or about December 2011, Robert O'Donnell a Director of AI-Daiwa represented that AI-Daiwa would perform the issued purchase order consistently with the terms of the Contract."  (Docket 37, 11:27-28.)  That is a contract claim, not a fraud claim.  Throughout the Counterclaims, Apparent acknowledges that AI-Daiwa did, in fact, perform by manufacturing and delivering working products in 2012.  Apparent alleges however, that "some" or a "percentage" of the products were allegedly defective.

Second, Apparent alleges that AI-Daiwa made fraudulent statements regarding testing results.  Apparent, again, fails to allege this cause of action with particularity, failing to allege when the statements were made (in 2011, 2012, 2013?), what tests were fraudulent, how they were falsified, whether the test was from the 2011 Protocols or the 2013 Protocols, and other facts to support any fraud allegation.  Thus, all fraud allegations must be dismissed.

### III.
### PROCEDURAL HISTORY

Plaintiff AI-Daiwa filed the Complaint on **September 9, 2013**, and a First Amended Complaint (FAC) on October 8, 2013, alleging the following causes of action against Defendants: (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) declaratory relief; (5) quantum meruit; (6) goods and services sold and delivered; and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(7) account stated.  (Docket Nos. 1, 5.)  Defendants filed a Motion to Dismiss **on January 13, 2014**, which the Court denied on **March 10, 2014**.  (Docket Nos. 29, 35.)  Apparent's Motion to Dismiss included a Declaration by Jacqueline deSouza with exhibits containing Contract and Purchase Orders referenced in Apparent's Answer and Counterclaims, and a Declaration by Dan Tran, Vice President of Manufacturing for Apparent Inc., discussing the discovery of the alleged defects for the products at issue.

On March 24, 2014, Apparent filed an Answer to the FAC and Counterclaims against AI-Daiwa and Advanced Innovations (AI). AI has yet to be served or appear.

## IV.
## FACTUAL BACKGROUND

### A.    Apparent's Technology

As stated in Apparent's Counterclaims, Apparent developed and patented intellectual property and applied it in an energy platform that extracts unstable energy from solar panels, converts and manages the phases of power to produce the type of energy wave needed by the customer or gird.  (Docket No. 37, 7:25-8:1.)[1]  Apparent sought to manufacture this device, a microgrid inverter ("MGi") model 220 or Aitra 5328.  (8:1-2.)

### B.    In 2011, the Parties Entered Into Contracts

In 2010, Apparent was introduced to AI.  (8:1-2.)  In 2011, AI and Apparent Energy Inc. entered into a Supply Chain Agreement.  (8:5-6.)  In July 2011, Apparent issued a purchase order to AI. (8:17.)  "*The Contract, among other terms, required AI to provide contract manufacturing consistent with Apparent Inc.'s specifications, quality standards.*"[2]  (10:13-15.)

According to the Customer Supply Chain Agreement that Apparent attached to its previously filed Motion to Dismiss, the agreement was for "*not less than 200,000 units of Products with AI in the Initial Term.*"  (Paragraph 4, redacted from Docket No. 29-1.)  Also attached to Apparent's Motion to Dismiss, the Purchase Order between Apparent and AI, dated **July 7, 2011**, was for a total of $7,405,758.80.  (Docket No. 29-1, page 23.)  Apparent alleges in

---

[1]  Unless otherwise noted, all page:line citations are to Apparent's Answer and Counterclaims (Docket No. 37).
[2]  Statements made by Apparent in previous pleadings have been italicized.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

its Counterclaims, "*Over several months and meetings with Robert O'Donnell, Jim Devlin, and Jeff Barrick all of whom were and/or are officers of AI, Apparent Inc. made very clear that it had extremely limited finances*." (Docket No. 37, 8:3-5.)  No mention of the issue is found in the Agreement.[3]

In December of 2011, AI demanded the Contract be assigned to a joint venture it created with Daiwa, Ltd.  The parties ultimately agreed to assign the initial purchase order to AI-Daiwa and the parties entered into Addendum No. One to the Contract that specified the purchase order would be re-issued to AI-Daiwa and AI and would be governed by certain terms of the Contract. (8:17-21.)  Apparent admits that pursuant to its Supply Chain Agreement and Addendum No. 1, it executed an amended purchase order for goods and material.  (2:25-26.)  Attached to Apparent's Motion to Dismiss, the Purchase Order between Apparent and AI-Daiwa, dated **December 20, 2011**, was for a total of $7,363,960.00 for 47,000 products.  (FAC, Exhibit B; Docket No. 5, page 20.)

## C.     In 2012, AI-Daiwa Manufactured Products and Delivered Them to Apparent

Apparent admits that AI-Daiwa made shipments of goods and materials pursuant to the terms of the Supply Chain Agreement and Addendum No. 1.  (3:1-2.)  Apparent admits that AI-Daiwa delivered goods and materials in 2012.  (5:4-5.)

According to the invoices attached as Exhibit A to AI-Daiwa's First Amended Complaint, AI-Daiwa sent six (6) invoices for a total of 4,265 products, dated **February 29, 2012**, through **April 25, 2012**. (Docket No. 5, 13-18.)  The first invoice dated **February 29, 2012**, was for 160 products.  (Docket No. 5, 13.)

---

[3] In ruling on a motion to dismiss, a district court generally "may not consider any material beyond the pleadings." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994). However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss....

   [A] document is not "outside" the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.... [W]hen [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading.... [D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.

*Id.* at 453–54 (quotations & citations omitted). Thus, for example, a court ruling on a motion to dismiss may consider the full texts of documents which the complaint quotes only in part. *Fecht v. The Price Co.*, 70 F.3d 1078, 1080 n. 1 (9th Cir.1995), cert. denied, 517 U.S. 1136, 116 S.Ct. 1422, 134 L.Ed.2d 547 (1996); *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 n. 4 (9th Cir.1996).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**D.     By the End of 2012, Apparent Owed AI-Daiwa at Least $200,000 for Products Manufactured and Delivered to Apparent**

In 2012, Apparent was continuously delinquent on payment for delivered products.  (14:7-10.)  There were "*disputes between the parties about what was owed for goods and materials shipped*."  (10:1-2.)  "*[O]ver the course of the manufacturing, the payment process was riddled with accounting issues*."  (9:23-24.)  "*As a result, in the later part of 2012, Apparent Inc. and AI-Daiwa (Frederick Wan, Herman Lau, and Robert O'Donnell) began a reconciliation of the excess inventory, returns, goods and material shipped, and payments*."  (10:2-4)  "*An interim reconciliation was completed in 2012 showing Apparent Inc. owed about $200,000 for goods and material shipped which was to be reduced by offsets for defective devices*."  (10:4-6.)  AI-Daiwa agreed that it owed money on products previously delivered:  "*on or about December of 2012, Apparent Inc. requested a container shipment of MGi devices.  Robert O'Donnell and Frederick Wan, directors of AI-Daiwa and officers of Daiwa agreed to deliver the container at an inflated cost, paying for the devices in advance and pay down any sums owing for goods and materials shipped*."  (14:7-10.)

**E.     In January 2013, AI-Daiwa Delivered the Final Shipment to Apparent**

Apparent admits that it purchased goods and material from AI-Daiwa that were delivered in 2013.  (2:22-23.)  The last shipment AI-Daiwa delivered was received in January 2013.  (9:5-6.)  Apparent admits that it pre-paid AI-Daiwa $500,000 in December of 2012 for goods and materials shipped in January of 2013.  (3:7-8.)[4]  Apparent admits that a portion of the payment was allocated for goods and materials shipped and for freight.  (3:8-9.)

**F.     At An Unspecified Time, Apparent Discovered Some Products Had Unspecified Defects**

Apparent fails to allege <u>when</u> it discovered any alleged defects, the extent of the defects, the number of defects, or the alleged cause of the defects.  Apparent alleges, in general terms, that "*From the start of the production, Apparent Inc. discovered that some delivered MGi devices did not meet Apparent Inc.'s specifications*."  (8: 26-27 (emphasis added).)  It is not alleged whether

---

[4] Before January 2013, AI-Daiwa had only received payment of $240,000, and Apparent had an outstanding balance of at least $200,000.

1    this the specifications are from the 2011 Protocol or the 2013 Protocol.  When Apparent was

2    unable to use a device, it notified AI-Daiwa "and teams were assigned to identify the root causes

3    and implement remedial measures."  (8:27-9:1.)

4          Apparent acknowledges AI-Daiwa provided working products, alleging "*Over time, the*

5    *percentage of defects increased and the root cause analysis suggested falsification in the testing*

6    *process and testing reports.*"  (9:4-6.)  It is not alleged whether this is the 2011 Protocol or the

7    2013 Protocol.

8          Apparent allegedly discovered only eleven (11) allegedly defective products out of the

9    first shipment of 160, as alleged by Dan Tran, Vice President of Manufacturing for Apparent Inc.,

10   in support of Apparent's Motion to Dismiss, signed on January 13, 2014 (Docket No. 29-2):

11         3.  After manufacturing started, I received and evaluated products shipped
           from AI-Daiwa upon receipt as well as after they were deployed in the
12         field.    The Contract specifies a twenty-four month warranty for
           workmanship for all products manufactured by AI-Daiwa.  In the course
13         of evaluating the products, **I discovered that some of the products AI-**
           **Daiwa delivered were not manufactured in conformity with standards**
14         **designated by Apparent**.  I contacted AI-Daiwa to address the product
           defects and worked with it on corrective action plans and, when necessary,
15         to return defective products.  Over the course of 2012 and 2013, AI-Daiwa
           agreed to process returns of devices it manufactured crediting Apparent's
16         account.

17

18         4.  **In many cases, the defects could not be identified until installed in the**
           **field**.    Thus, several days or weeks lapsed between the delivery and
19         received dates and the dates upon which defects were identified.   AI-
           Daiwa processed returns months after the products had been shipped and
20         received by Apparent.  For example, **AI-Daiwa shipped 160 products on**
           **February 29, 2012**, and invoiced Apparent in invoice no.:
21         20120228APT008-R1.  A copy of this invoice is attached as page one of
           Exhibit A to the First Amended Complaint. (RFJN, Docket No. 5, Exh.A.)
22         I received the products on March 2, 2012.  **On July 27, 2012, in meeting**
           **with AI-Daiwa, I identified defects with 11 of the products shipped**
23         **and began working with AI-Daiwa to implement corrective action**.
           AI-Daiwa subsequently credited the costs of the products to Apparent.
24

25         5.  In July of 2013, I advised AI-Daiwa that Apparent would not accept any
           additional products unless tested by a third party.  (Docket No. 29-2, 2:10-
26         4:4.)

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**NOTICE OF MOTION AND MOTION TO
DISMISS - CV13-4156 VC**

G.     **In July and August 2013, After Delivery of the Final Shipment in January 2013, Apparent's Demanded Products Be Tested by a Third Party**

"*Upon receipt of the shipment in January of 2013, Apparent Inc. discovered that a substantial percentage of the devices were defective and could not be used.*"  (9:11-12.) "*Apparent Inc. and AI-Daiwa again began a root cause analysis which pointed to a purposeful and systemic failure to implement procedures for manufacturing and testing and falsification of the testing results.*"  (9:13-15.)  It is not alleged what testing results were allegedly falsified or whether the testing procedures are from the 2011 Protocol or the 2013 Protocol.  "*A subsequent investigation revealed the defects were caused by poor workmanship and could not be used for the purpose intended.  Apparent Inc. requested that AI-Daiwa engage in remedial measures including third party testing.*"  (13:2-4.)

Apparent does not allege that the remedial measures or third-party testing occurred prior to the January 2013 delivery.  In fact, Apparent alleges that AI-Daiwa refused to perform third-party testing.  "*Ultimately, when Apparent Inc. notified AI-Daiwa of the volume of defects, advising that Apparent Inc. required third party testing of all devices before shipment, AI-Daiwa refused.*"  (12:12-14.)

Apparent acknowledges that identifying root causes and implementing remedial measures were time-intensive processes, stating "*These processes were labored, and took lengthy periods of time.  For example, one such root cause process started in mid-2012 resulted in a remedial measures report that AI-Daiwa issued in 2013.*"  (9:1-3.)  The "*in 2013*" date is the only date provided in the Counterclaims regarding "remedial measures."  The Counterclaims otherwise generally allege "*Apparent Inc. requested that AI-Daiwa engage in remedial measures including third party testing*" (13:3-4.), and that AI-Daiwa "*delayed implementing remedial measures when root causes were identified.*" (12:11 and 14:2.)  Apparent fails to plead with particularity any details regarding the remedial measures or whether they are based on the 2011 Protocol or the 2013 Protocol.  For example, Apparent fails to allege with particularity when these remedial measures were implemented (other than, generally, "*in 2013,*" which must have occurred after any reconciliation in December 2012, and was likely after the final shipment in January 2013).

Further, Apparent fails to allege what these remedial measures were, how long AI-Daiwa delayed implementing the remedial measures, or when the root causes were identified.

"*Due to the increase of defective products over the course of 2012, Apparent Inc. requested that each MGi device be re-tested before shipment.*"  (14:10-12.)  If Apparent's use of the word "re-test" in this sentence is meant to imply that Apparent requested AI-Daiwa "test again" using the same tests from the 2011 Protocol, such use is disingenuous.  After the last delivery was made in January 2013, Apparent requested third-party testing.  "*In July and again August of 2013, Apparent Inc. advised AI-Daiwa that the magnitude of the failure rate triggered mass defect and it could no longer accept products unless they were tested by a third-party as Apparent Inc. could not use the devices in installations.*" (9:15-18.)  Apparent does not allege in their Counterclaims whether this third-party test would apply the 2011 Protocol in place when the parties entered into the agreement or the 2013 Protocol created after the last shipment Apparent received.  Apparent also fails to allege with particularity <u>when</u> they discovered any alleged defects.[5]  Apparent alleges that the remedial measures report issued in 2013 started in mid-2012. (9:1-3.)

Apparent alleges that "*Specifically, AI-Daiwa did not produce MGi devices in conformity with Apparent Inc.'s specifications or quality standards; delayed implementing remedial measures when root causes were identified; and did not engage in cost reduction or design. Ultimately, when Apparent Inc. notified AI-Daiwa of the volume of defects, advising that Apparent Inc. required third party testing of all devices before shipment, AI-Daiwa refused.*" (12:9-14.)  However, Apparent does not describe with particularity what the defects are or how AI-Daiwa could have determined the products were allegedly defective other than by performing testing (2011 or 2013 Protocol?) or looking at a "remedial measures report" that was issued at some unknown time in 2013, most likely <u>after</u> any statements made to AI-Daiwa for the products delivered in January 2013.[6]  See e.g. Declaration of Dan Tran of Apparent wherein he stated that

---

[5] Mr. Tran declared that Apparent received 160 products on March 2, 2012, and by July 27, 2012, Apparent had only identified 11 of those 160 products had defects.  (Docket No 29-2, 2:18-27.)  It is unclear what the alleged defects were for those 11 products, but Tran testified that "AI-Daiwa subsequently credited the costs of the products to Apparent." (Docket No 29-2, 2:26-27.)

[6] In Mr. Tran's Declaration, he declared that he could not determine whether a product was allegedly defective when

**NOTICE OF MOTION AND MOTION TO
DISMISS - CV13-4156 VC**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  "*In many cases, the defects could not be identified until they were installed in the field.*" (Docket

2  29-2, 2:4.)  Dan Tran declared that, as Vice President Manufacturing of Apparent, *"[his]position*

3  *requires [him] to manage the ordering, delivery, testing and corrective action, and return process*

4  *associated with manufacturing Apparent's products.*" (Docket No. 29-2).)

5  **H.       At an Unspecified Time, Apparent Alleges AI-Daiwa Falsified Testing Reports**

6         "*In written and oral communications, Mr. O'Donnell, and others including James Chong,*

7  *represented that each device had been re-tested and met Apparent Inc.'s specifications when they*

8  *had no reason to believe the representations to be true.*"  (Docket No. 37, 14:12-15.)  While we

9  cannot determine from the Counterclaims when those alleged representations were made, the next

10  paragraph makes it clear that these alleged representations were not made in December of 2012 in

11  connection with the last shipment made in 2013 – since the next paragraph begins with "*On*

12  *another occasion on or about December of 2012....*" (12:16-17.)  Despite alleging Apparent

13  received written communications, Apparent does not state with particularity <u>when</u> these written

14  and oral communications took place.

**V.**
**ARGUMENT**

15

16

17  **A.       Standard of Review of Motion to Dismiss**

18         Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed

19  because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

20  A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the

21  complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir.2003).  Review is generally

22  limited to the contents of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.*,

23  69 F.3d 381, 385 (9th Cir.1995).  All allegations of material fact are taken as true. *Erickson v.*

24  *Pardus*, 551 U.S. 89, 93, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).  However, legally

25  conclusory statements, not supported by actual factual allegations, need not be accepted.  See

26  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  A plaintiff's

27  he received it.  "After manufacturing started, I received and evaluated products shipped from AI-Daiwa upon receipt as well as after they were deployed in the field."  (Docket No 29-2, 2:10-11.)  "In many cases, the defects could not be identified until installed in the field.  Thus, several days or weeks lapsed between the delivery and received dates and the dates upon which defects were identified." (Docket No 29-2, 2:18.)

28

- 9 -  **NOTICE OF MOTION AND MOTION TO DISMISS - CV13-4156 VC**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations and quotations omitted) (*"Twombly"*). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80. However, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Twombly*, *supra*, at 558. Thus, a motion to dismiss will be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See *Id.,* at 558–59.

**B.     Heightened Standard for Claims Alleging Fraud**

A motion to dismiss a complaint or claim "grounded in fraud" under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. *See Vess v. Ciba–Geigy Corp. USA, supra*, 317 F.3d at 1106; *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997).

The requirements of Rule 9(b) may be relaxed as to matters that are "*peculiarly within the opposing party's knowledge*" under circumstances where the plaintiff reasonably would not be expected to have knowledge of those facts without the opportunity for discovery. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987) (citations omitted); *In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217, 1228 (N.D.Cal. 1994). Pleading the knowledge or scienter element of a fraud claim is not required to be made with particularity but may be made generally,

1  under Rule 9(b).  *Odom v. Microsoft Corp.,* 486 F.3d 541, 554 (9th Cir.2007) ("While the factual

2  circumstances of the fraud itself must be alleged with particularity, the state of mind—or

3  scienter—of the defendants may be alleged generally.").  However, knowledge must still be

4  pleaded sufficiently to make entitlement to relief plausible.  *Twombly, supra,* 500 U.S. at 569; *see*

5  *also Oestreicher v. Alienware Corp.,* 544 F.Supp.2d 964, 968 (N.D.Cal.2008) *aff'd,* 322 F. App'x

6  489 (9th Cir.2009).

7  **C.  Elements of Fraud Cause of Action**

8  In California, the tort of fraud (deceit) requires a misrepresentation, knowledge of falsity,

9  intent to induce reliance, reliance, causation and resulting damages.  *Robinson Helicopter Co.,*

10 *Inc. v. Dana Corp.*, 34 C4th 979, 990 (2004).  Like fraud, negligent misrepresentation is

11 statutorily defined as a form of deceit, but it differs from fraud in that it lacks the element of

12 scienter (knowledge of falsity).  *Charnay v. Cobert,* 145 CA4th 170, 184 (2006).  Courts

13 analyzing tort cases often rely on contract cases (and vice versa), and may interchangeably cite

14 the tortious deceit statutes (Civ.C. §§ 1709–1710) and contractual fraud statutes (Civ.C. §§ 1572–

15 1573).  *See Pacesetter Homes, Inc. v. Brodkin,* 5 CA3d 206, 210–211 (1970); *Bily v. Arthur*

16 *Young & Co.*, 3 C4th 370, 415 (1992); see also 5 Witkin, Summary of California Law, Torts §

17 767.

18 **1.  Neither of Apparent's Fraud Allegations Satisfy the Particularity**
   **Requirements**

19

20 Both of the fraud allegations in the Counterclaims fail.  First, Apparent alleges that AI-

21 Daiwa knew at the time it entered into the agreement in December 2011 that it would not be able

22 to perform the contract.  This breach of contract cause of action alleged as fraud is contradicted

23 by the facts set forth in Apparent's own allegations throughout the Counterclaims.

24 Second, Apparent alleges that AI-Daiwa falsified testing results.  Apparent fails to allege

25 this allegation with particularity.  Apparent does not allege <u>when</u> the statements were made what

26 testing results were falsified, and how.  Both fraud allegations fail to meet the heightened

27 pleading standard under Fed.R.Civ.P. Rule 9(b).

28 Further, taking all the alleged facts as true, any fraudulent statements regarding testing

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  must have been made <u>after</u> Apparent received final delivery in January 2013, which shows

2  Apparent could not have relied on those statements to their detriment.  Therefore, based on the

3  allegations made by Apparent, Apparent "*can prove no set of facts in support of his claim which*

4  *would entitle him to relief.*"  *Conley v. Gibson*, supra, 355 U.S. at 45–46.

5        **a.**    **Apparent Fails to Allege Any Misrepresentations Were Made Prior to the Formation of the December 2011 Amendment to Agreement**

6  A promise made (a present intention to perform) without intending to fulfill it—

7  "promissory fraud"—is actionable as fraud.  Civ.C. § 1710(4); *Engalla v. Permanente Med.*

8  *Group, Inc.* 15 C4th 951, 973, 64 CR2d 843, 857 (1997) ("A promise to do something necessarily

9  implies the intention to perform; hence, where a promise is made without such intention, there is

10  an implied misrepresentation of fact that may be actionable fraud"); *Behnke v. State Farm*

11  *Gen.Ins. Co.* (2011) 196 CA4th 1443, 1453, 127 CR3d 372, 380 (same).

12  <u>The time, date:</u>

13  "*On or about December 2011, Robert O'Donnell a Director of AI-Daiwa represented that*

14  *AI-Daiwa would perform the issued purchase order consistently with the terms of the Contract.*"

15  (11:27-28.)

16  <u>The content of the alleged fraudulent representation:</u>

17  Apparent alleges that AI-Daiwa made statements that it would perform according to the

18  contract: "*Mr. O'Donnell represented that AI-Daiwa would produce goods of high quality in*

19  *conformity with Apparent Inc's specifications and quality standards, would provide the supply*

20  *chain services specified in the Contract, and would work on cost reductions as specified in the*

21  *Contract.  Mr. O'Donnell represented that AI-Daiwa had extensive resources and could support*

22  *Apparent Inc's design and manufacturing process.*"  (12:1-5.)

23  <u>How or why the representation was false or misleading:</u>

24  Apparent fails to explain that the representation was false or misleading.  In fact, the

25  allegations, if taken as true, provide evidence that – for the most part – AI-Daiwa did comply.

26  Apparent does not allege that AI-Daiwa did not perform the testing set forth in the 2011 Protocol

27  in the agreement.

28

RC1/7423517.1/RS  - 12 -  **NOTICE OF MOTION AND MOTION TO DISMISS - CV13-4156 VC**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Defendant must know the statement is false or act with reckless disregard of its truth or

2    falsity. *Lazar v. Sup.Ct. (Rykoff–Sexton, Inc.)*, 12 C4th 631, 638 (1996); *Bily v. Arthur Young &*

3    *Co.*, 3 C4th at 415—scienter requirement satisfied if defendant has no belief in truth of statement

4    and makes it recklessly, without knowing whether it is true or false; Rest.2d Torts § 526.

5    Defendant must intend to induce the other party to act in reliance on the false information.  Civ.C.

6    § 1709; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 CA4th 445, 481

7    (1998); *see also Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 CA3d 388, 404–407

8    ((1989) (reversible error to omit elements of intent from jury instruction); 5 Witkin, Summary of

9    California Law, Torts § 807.

10    Taking as true all the allegations Apparent made in the Counterclaims, AI-Daiwa said that

11    it would perform by manufacturing products according to Apparent's design specifications in the

12    2011 Protocol.  AI-Daiwa performed tests and when Apparent was not satisfied with "some"

13    (likely 11 of 160) of the products, AI-Daiwa took remedial measures.  Apparent only had "some"

14    products that were allegedly defective and "over time, the percentage of defects increased" – and

15    then later, Apparent alleges that "a substantial percentage of the devices were defective."  If AI-

16    Daiwa knew in 2011 that it was incapable of manufacturing the products as designed, then

17    Apparent could have alleged that "none" of the products worked or "all" of the products were

18    defective.  Instead, Apparent ignores the "pleading with particularity" requirements of a fraud

19    allegation, and alleges that "some" of the products did not comply or a "percentage" were

20    defective.  This is clearly not adequate and these fraud allegations must be dismissed for failure to

21    plead with particularity.

22         **b.    Apparent Fails to Plead with Particularity the Claims What Test
            Results AI-Daiwa Allegedly Falsified**

23

24    The allegations related to "falsification" of testing process fail to meet the particularity

25    requirements of Fed.R.Civ.P. Rule 9(b).  Apparent allegations merely suggest that fraud could

26    have been possible, using indicative language such as "pointed to" or "suggested," rather than any

27    sort of language that would meet the Rule 9(b) requirements.  Most importantly, Apparent fails to

28    allege <u>when</u> the statements were made.  Apparent alleges that "Apparent Inc. and AI-Daiwa again

began a root cause analysis which <u>pointed to</u> purposeful and systemic failure to implement procedures for manufacturing and testing and falsification of the testing results." (9:13-15.) Apparent alleges that "<u>Over time</u>, the percentage of defects increased and the root cause analyses <u>suggested</u> falsification in the testing process and testing reports." (9:4-5) Suggestions and facts that allude to or "point to" conclusions are not sufficient.

<u>The time, date:</u>

As set forth in the Factual Background, Apparent fails to allege when these alleged misrepresentations or falsified testing results occurred. This is extremely relevant, because the representations must be made prior to any alleged damages caused by the representation. Here, it is not alleged when the statements were made or whether any alleged falsification was based on the 2011 Protocol or 2013 Protocol.

<u>The content of the alleged fraudulent representation:</u>

Apparent alleges that AI-Daiwa falsified tests, but Apparent fails to allege with particularity any further information regarding the falsified testing results. These allegations are not particular enough to satisfy Rule 9(b). See, e.g., *SmithKline Beecham*, 245 F.3d at 1051 (holding that broad allegation that the defendant "knowingly ... changed control numbers [on various tests] to wrongfully represent that the laboratory results fell within an acceptable standard of error," where the **plaintiff did not specify the "types of tests implicated in the alleged fraud, identify the [defendant's] employees who performed the tests, or provide any dates, times, or places the tests were conducted," did not satisfy Rule 9(b)**) (emphasis added.); *In re GlenFed*, 42 F.3d at 1547–48 (requiring a plaintiff to state the time, place, and content of an alleged misrepresentation and explain why the statement is false or misleading in order to satisfy Rule 9(b)). It is entirely unclear from the pleadings what "testing" was performed or what "testing results" could have been falsified – or whether it would have been reasonable for Apparent to justifiably rely on the tests. Further, without knowing when the statements were made – other than "over time" – it is impossible to determine whether Apparent's fraud allegations could satisfy the reliance, causation, and damages elements.

<u>How or why the representation was false or misleading:</u>

1    Likewise, Apparent fails to explain how or why the representation was false or

2    misleading.  Apparent does not allege whether the testing was from the 2011 Protocol or 2013

3    Protocol.  Further, any statements made in 2011 when the contract was entered into or 2012 when

4    products were delivered cannot foresee future testing requirements and specifications created in

5    2013.

6        Without alleging the foregoing with particularity, Apparent has not alleged a cause of

7    action for fraud.  As such, Apparent's fraud cause of action must be dismissed.

8                                     **VI.**
                                **CONCLUSION**

9        For the aforementioned reasons, AI-Daiwa respectfully requests that this Court dismiss

10   Apparent's second cause of action in its Counterclaims for fraud for failure to plead with

11   particularity as required by Fed.R.Civ.P. Rule 9(b).

12

13   Dated: April 17, 2014                    ROPERS, MAJESKI, KOHN & BENTLEY

14

15                                   By: /s/ *Lael D. Andara*
                                         _____
16                                       CHI-HUNG A. CHAN
                                         LAEL D. ANDARA
17                                       MICHAEL D. KANACH
                                         Attorneys for Plaintiff AI-DAIWA, LTD.

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7423517.1/RS

**NOTICE OF MOTION AND MOTION TO
DISMISS - CV13-4156 VC**