1  CHI-HUNG A. CHAN (SBN 104289)
   LAEL D. ANDARA (SBN 215416)
2  MICHAEL D. KANACH (271215)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  1001 Marshall Street, Suite 500
   Redwood City, CA  94063-2052
4  Telephone:    (650) 364-8200
   Facsimile:    (650) 780-1701
5  Email:        cchan@rmkb.com
                 blyle@rmkb.com
6
   Attorneys for Plaintiff
7  AI-DAIWA, LTD.

8  JACQUELINE DESOUZA, State Bar No. 133686
   DESOUZA LAW OFFICES, PC
9  1615 Hopkins Street
   Berkeley, CA 94707
10 Telephone: (510) 550-0010
   Fax: (510) 649-3420
11
   Attorneys for Defendants
12 Apparent Inc; Apparent Energy Inc;
   Apparent Solar Inc; Xslent Energy Technologies, LLC,
13 Apparent Solar Investments (II), LLC erroneously sued
   herein as Apparent Solar Investments, LLC and
14 Counterclaimants Apparent Inc and Apparent Energy Inc

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AI-DAIWA, LTD., | CASE NO.  CV13-4156 VC |
| Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT PURSUANT TO THE REASSIGNMENT STANDING ORDER** |
| v. | |
| APPARENT, INC., a Delaware Corporation; APPARENT ENERGY, INC., a Delaware Corporation; APPARENT SOLAR, INC., a Delaware Corporation; APPARENT SOLAR INVESTMENTS, LLC, a Hawaii limited liability company; XSLENT, LLC, a Delaware limited liability company; XSLENT ENERGY TECHNOLOGIES, LLC, a Delaware limited liability company; and DOES 1-10 inclusive, | |
| Defendants. | |

| | |
|---|---|
| 1 | APPARENT, INC., a Delaware corporation; APPARENT ENERGY, INC., a Delaware corporation, |
| 2 | |
| 3 | Counterclaimants, |
| 4 | vs. |
| 5 | AI-DAIWA, LTD; ADVANCED INNOVATIONS USA, LLC; and ROES 1-10 inclusive. |
| 6 | |

On April 17, 2014, this case was assigned to the Honorable Vince Chhabria, United States District Judge. Pursuant to the Judge Chhabria's Reassignment Order, the parties are required to file a Case Management Statement by May 1, 2014.

On March 31, 2014, following the meet and confer conference held on March 18, 2014, the parties and their respective counsel of record to the above-entitled action jointly submitted a Joint Case Management Statement and Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California dated November 27, 2012, and Civil Local Rule 16-9. (Docket No. 38).

**1.     Jurisdiction and Service**

**Plaintiff's Section**

Complaint:

Plaintiff filed its First Amended Complaint on October 8, 2013.

Regarding jurisdiction, Defendants' Motion to Dismiss, which was based on the contention that jurisdiction was improper, was denied on March 10, 2014. Plaintiff is not aware of any other objections to jurisdiction with respect to Plaintiff's First Amended Complaint.

Regarding service, all Defendants have all been served and have appeared, except for Xslent LLC. Defense counsel informed Plaintiff that they will not accept service on behalf of Xslent LLC, based on counsel's contention that the company Xslent LLC does not exist. Upon information and belief, and according to the California Secretary of State website, Xslent LLC is an active corporation and exists. Plaintiff will do discovery as to whether and to what extent Xslent LLC is related to the other Defendants, particularly Xslent Energy Technologies, LLC, and to what extent those parties have transferred assets or are have comingled funds. Plaintiff

will consider dismissing Xslent LLC without prejudice.

Counterclaims:

Defendants filed an Answer and Counterclaims on March 24, 2014. On April 17, 2014, AI-Daiwa filed a Motion to Dismiss the fraud allegations in Defendants' Counterclaims. (Docket No. 46.)

Regarding jurisdiction, it is not known at this time whether Advanced Innovations, USA, LLC (having not been served), will object to jurisdiction in Federal Court, based on the terms of the contract between Advanced Innovations, USA, LLC, and AI-Daiwa, or on other grounds.

Counsel for AI-Daiwa has informed defense counsel that it does not represent Advanced Innovations, USA, LLC, at this time, and cannot accept service of the Counterclaims on behalf of Advanced Innovations, USA, LLC.

**Defendants' Section**

Defendants have not disputed this Court's jurisdiction but venue. To expedite the action, they waived the venue selection clause in the parties' Supply Chain Agreement ("Contract").

As to the First Amended Complaint, Defendants filed an objection to Plaintiff's representation of completed service upon Xslent LLC (Docket No. 20). As to Apparent Solar Inc., Xslent Energy Technologies, LLC, and Apparent Solar Investments II, LLC erroneously sued herein as Apparent Solar Investments, LLC, Defendants have requested they be dismissed. Apparent Inc is the sole shareholder/member of each entity and none of these entities were involved in the manufacturing process. Defendants have offered to provide declarations to support the dismissal and to stipulate that if discovery yields facts to support naming the entities they can be joined subject to their right to present a defense.

As to the Counterclaim, Counter-claimants will attempt to complete service on Advanced Innovations (USA) Inc pursuant to the Federal Rules by June 7, 2014. Plaintiff has filed a motion to dismiss the fraud cause of action in the Counterclaim. Counterclaimants will file a response and will file a Motion to Amend pursuant to Federal Rules of Civil Procedure, rule 15 as the Court's CMC Orders require amendments with leave of Court.

**2. Facts**

**Plaintiff's Section**

This is a breach of contract case, whereby Plaintiff performed all its duties pursuant to the contract and Defendants failed to pay. While the technology is advanced (solar power microgrid inverters or "MGi devices"), the facts are simple.

The parties entered into an agreement. Defendants provided specifications for their MGi devices (hereinafter "product(s)"). Defendants provided testing requirements, and the contract terms required that each product pass the testing requirements before it was shipped to Defendants. Plaintiff manufactured products per Defendants specifications, tested the products pursuant to Defendants' testing requirements, provided proof of the testing to Defendants, and thereafter shipped products – each of which had passed Defendants' test – to Defendants.

After the parties entered into the agreement and Plaintiff had begun shipping products to Defendants, Defendants allegedly determined, months and years after delivery, that some of their products did not work. Based on the fact that the products were manufactured to specification and passed the tests that Defendants provided, Plaintiff believes that the products were not properly designed for the environmental conditions for which Defendants sold them. After Defendants allegedly realized that some of their products did not work, <u>Defendants asked Plaintiff to perform a new test</u>, replicating environmental conditions in which the units failed. (To date, Defendants have not yet provided Plaintiff's counsel with any evidentiary proof that the products were manufactured in deviation from Defendants' specifications. Nor have Defendants sent any products to Plaintiff's counsel for analysis.) Defendants did not bring up the alleged failure of devices until months after the parties negotiated Defendants' refusal (or inability) to pay, given a significant amount of time passed.

Defendants do not dispute the fact that they did not make timely payments. Instead, Defendants set forth two arguments for the basis that their non-performance is excused: (1) The product was not made to Defendants' specifications, and (2) Defendants have no money.[1]

---

[1] Defendants also allege fraud, but Plaintiff anticipates moving to dismiss that improperly plead claim.

First, Defendants argue that Plaintiff delivered products that were not manufactured pursuant to Defendants' specifications. This argument ignores three facts: (1) Defendants designed the product, (2) Defendants created a test that would determine whether the products were made to specification, and (3) the products Plaintiff shipped to Defendants passed the test Defendants created and the results of the tests were immediately transmitted to Defendants via the internet.

Defendants never contend that the products did not pass the first test. Instead, Defendants allege that "Upon receipt of the shipment in January of 2013, Apparent Inc discovered that a substantial percentage of the devices were defective and could not be used." (Docket 37, 9:11-12.) Plaintiff ignores the possibility that their design was the basis for failure, even when they are manufactured to specification. After Defendants' alleged discovery that some products did not work, Defendants designed a new test that the previous design specifications could not pass. Thus, products that could pass the first test would not pass the new test. When Defendants contend that the products did not pass testing requirements and/or quality standards, Defendants fail to acknowledge that Defendants created these new testing requirements <u>after</u> the contract was entered into and <u>after</u> Plaintiff shipped products to Defendants. When Plaintiff entered into the agreement with Apparent, Plaintiff confirmed its ability to manufacture products to the specifications that were provided at that time. Plaintiff agreed to manufacture and did manufacture products to a different specification than what Defendants now assert. Plaintiff relied on Defendants' knowledge and skill of their industry, patented technology, and trade secrets. Plaintiff expected that Defendants could design a product that would work, and Plaintiff manufactured products based on the specifications provided.

Second, Defendants appear to argue that Plaintiff should not have expected to be paid on the contract that Apparent signed. As Defendants stated in their Counterclaims "Apparent Inc made very clear that it had extremely limited finances." (Docket No. 37, 8:3-5.) Whether or not Apparent made any statements to Plaintiff about its financial condition during the parties' negotiations over terms of an agreement is irrelevant to whether Apparent is excused from

performance of the agreement that it signed. We are aware of no law that states that statements made about a parties' financial condition supersedes the clear language of a contract.

Defendants' fraud allegations must be dismissed for failure to plead with particularity under FRCP Rule 9(b), and failure to state a claim upon which relief can be granted under FRCP Rule 12(b)(6).

### **Defendants' Section**

This action arises from the failure of AI-Daiwa to manufacture products to specifications provided by Apparent Inc. In the final shipment received by Apparent, over 20% of the products failed out of the box largely due to workmanship issues such as failed soldering. The failure rate triggered the warranty and mass defect provisions of the parties' Contract permitting Apparent to suspend the Contract and requiring AI and AI-Daiwa to engage in corrective action. Instead, AI and AI-Daiwa ceased cooperation and filed this action.

Apparent Energy Inc and Advanced Innovations USA, LLC (AI) entered into the Contract in July of 2010. Apparent Energy Inc subsequently assigned the Contract to its parent, Apparent Inc. The parties intended that this Contract would control subsequent operational documents exchanged during the manufacturing process, and so specified in the Contract.

The Contract describes specifications for the MGi220 device and quality requirements that impose an overall .03% (.0003) failure rate per million devices. This translates to not more than 300 failures per million and not more than 3 failures per 10,000 devices. AI agreed to a 24 month warranty period running from the date of delivery. For any defective devices, AI agreed to replace or repair the device and also agreed to a mass defect provision that specified Apparent was entitled to suspend the Contract and the parties would engage in remedial measures. As to price, AI set an initial price for the first 40,000 devices produced subject to reduction in cost for yield and labor costs and to partial deferral of the price.

Pursuant to the Contract Apparent issued a purchase order to AI and initially took delivery of product from a non-Daiwa manufacturer. In December of 2011, AI requested that Apparent re-issue the purchase order to a joint venture it formed with Daiwa Ltd. AI-Daiwa and Apparent

RC1/7443814.3/MK6

JOINT CASE MANAGEMENT CONFERENCE
STATEMENT - CV13-4156 VC

executed Addendum No. One to the Contract, which provided AI-Daiwa was bound by the terms of the Contract for all purposes applicable for the performance of the parties' purchase order. AI-Daiwa switched all manufacturing to it.

From the start of the production runs, Apparent discovered workmanship issues ranging from minor defects to damaged components due to bad soldering. AI-Daiwa promptly admitted the defects and agreed to credit Apparent. The parties engaged teams to determine what root causes created the defects so remedial measures could be implemented. One such process resulted in a written corrective action report in which AI-Daiwa admitted to several workmanship issues and identified corrections to its process. Over time, the root causes identified suggest falsification of the testing process. The defects and inconsistent test results increased over time and for the last shipment requested from AI-Daiwa (January of 2013), Apparent requested that each device be re-tested. AI-Daiwa's Robert O'Donnell and James Chong represented that AI-Daiwa re-tested each device but the shipment still contained over 20% defective devices. The defects identified by Apparent point to a purposeful failure to implement the testing procedures and falsification of the testing results. Apparent, again, notified AI-Daiwa of the defects and advised that due to the magnitude of the failure rate it could no longer accept products unless they were tested by a verified process. AI-Daiwa refused. Of note, products from AI's prior manufacturer has not resulted in the defects or testing anomalies experienced with AI-Daiwa.

AI-Daiwa claims that Apparent has failed to pay for goods and materials shipped as well as for components it purchased. The payment process has been riddled with reconciliation problems. While AI and AI-Daiwa acknowledged their obligation to credit excess inventory and defects to Apparent, they delayed doing so creating inaccurate balances. AI-Daiwa refused to apply payments made to AI at its request for goods and materials. AI's parent company (Advanced Innovations, Ltd) demanded payments be made to it. And, AI-Daiwa did not implement the cost reduction steps required for pricing. Ultimately, AI-Daiwa and Apparent engaged in a reconciliation showing an interim sum due of about $200,000 that the parties agreed would be reduced by the final determination of defects and credits. Despite the 'interim' nature of

the accounting, Apparent continued to pay against this sum. But, when AI-Daiwa stopped addressing the defect issues, the reconciliation stopped.

The principal factual issue in dispute is the cause of the defects. Apparent attempted to engage AI-Daiwa in joint testing which AI-Daiwa has refused. At the Initial Case Management Conference, the Court asked the parties to stipulate to a Court-ordered expert to conduct joint testing. Both parties agreed and prepared a joint scope of examination for the Court's review. The parties requested additional time to select a joint expert or to submit two names for the Court's selection. In addition, there are factual disputes relating to the representations made by the parties and verifying supplies AI-Daiwa claims to have purchased to determine the extent of damages claimed.

3. **Legal Issues**

**Plaintiff's Section**

With respect to Plaintiff's First Amended Complaint, the main legal issue appears to be whether Defendants can alter their specifications and testing requirements as an excuse for nonpayment – or as an excuse for Defendants' product design.

With respect to Defendants' Counterclaims, Plaintiff filed a Motion to Dismiss the fraud claims, which Plaintiff contends are not plead with particularity per the requirements of FRCP Rule 9(b) and fail to state a claim for relief under FRCP Rule 12(b)(6).

**Defendants' Section**

The legal issues include the applicability and interpretation of the Contract under the UN Convention on Contracts for the International Sale of Goods and/or the California Commercial Code; the amount of the offset and price reduction Apparent is entitled to under these laws for products shipped that are not in conformity to specifications; the extent of AI and AI-Daiwa's breach of the Contract and the extent of damage for such breaches and fraudulent conduct.

4. **Motions**

**Plaintiff's Section**

Plaintiff filed a Motion to Dismiss the fraud claims in Defendants' Counterclaims, which

JOINT CASE MANAGEMENT CONFERENCE
STATEMENT - CV13-4156 VC

RC1/7443814.3/MK6

is scheduled for a hearing on May 22, 2014. Plaintiff also anticipates filing a Motion for Summary Judgment with respect to the contract claims.

**Defendants' Section**

Defendants previously filed a Motion to Dismiss for failure to state a cause of action and improper venue. Before the hearing, Defendants waived venue and the Court denied their Motion to Dismiss for failure to state a cause of action. Plaintiff has filed a motion to dismiss the fraud claims in the Counterclaim and Counterclaimants will file a response and a Motion to Amend the Counterclaim.

Defendants intend to bring a partial motion for summary judgment as to the application of the Contract and as to liability of Apparent Solar Inc., Xslent Energy Technologies, LLC, and Apparent Solar Investments (II), LLC. Defendants will evaluate evidence produced in discovery and may bring a dispositve motion as to the breach of contract and fraud claims.

5. **Amendment of Pleadings**

**Plaintiff's Section**

No amendments to the pleadings are anticipated at this time, unless Defendants choose to dismiss the fraud claims in Defendants' Counterclaims.

**Defendants' Section**

Defendants will respond to the motion and file a motion to amend pursuant to Federal Rules of Civil Procedure, rule 15 as the Court's CMC Order does not permit amendments without leave of Court.

6. **Evidence Preservation**

All parties that have appeared in this matter have reviewed the ESI Guidelines, discussed the ESI Checklist, and met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The agreed to preservation period is January 2011 to the filing of this action on September 9, 2013.

Case3:13-cv-04156-VC Document48 Filed05/01/14 Page10 of 17

**7. Disclosures**

As stipulation between the parties, Plaintiff complied with the disclosure requirements prior to the Case Management Conference/Status Conference and Defendants complied with their disclosure requirements on April 9, 2014.

**8. Discovery**

**Plaintiff's Section**

Plaintiff served Defendants with written discovery shortly after the 26(f) conference and Apparent recently responded. The parties are working together to determine available dates for deposition(s). Plaintiff intends to take at least one deposition within the next month.

**Defendants' Section**

<u>Pending and proposed discovery</u>: Plaintiff has served Defendants with written discovery which is due at the end of April. Plaintiff timely responded. Plaintiff has noticed the deposition of Apparent's CTO to which Defendants will respond. The parties have entered a stipulation governing electronically stored discovery and a protective order. Defendants do not request any modifications to limitations on discovery. Defendants anticipate scheduling a person most knowledgeable deposition and serving written discovery to be completed by May 31st. They anticipate the areas of inquiry will relate to the Contract, the manufacturing process and defects, payment reconciliation, and verifying the production and procurement of components.

<u>Anticipated discovery issues:</u> Plaintiff seeks to take the deposition of Defendants' counsel and Defendants have requested a specification of the scope of inquiry to be included in the notice and the notice be served sufficiently in advance of the deposition so that any issues can be timely addressed. Defendants anticipate that discovery disputes may arise relating to Plaintiff's demand for source codes relating to Defendants' products and testing.

Pursuant to the parties' stipulation at the Initial Case Management Conference, they prepared a stipulation as to joint testing by a Court-appointed expert. They submitted the parameters for such testing by stipulation to the Court and are evaluating two experts from Exponent to serve as the designated Court-appointed expert.

- 10 -

RC1/7443814.3/MK6

JOINT CASE MANAGEMENT CONFERENCE STATEMENT - CV13-4156 VC

9. **Class Actions**

This section is not applicable.

10. **Related Cases**

This section is not applicable.

11. **Relief**

### Plaintiff's Section

As set forth in Plaintiff's First Amended Complaint (Docket No. 5), Plaintiff seeks payment due and owing of not less than $443,622.76, for goods received, according to proof; payment of not less than $6,271,009.62 for materials purchased and prepared in reliance on Purchase Order AI122011, according to proof; exemplary and/or punitive damages according to proof; costs of suit incurred herein; reasonable attorney fees pursuant to contract and Civil Code §1717; such other and further relief as this Court deems just and proper. Plaintiff also asks that Defendants take nothing on their Counterclaims.

### Defendants' Section

Defendants ask that Plaintiff take nothing on its complaint. Defendants ask for a determination of the rights and obligations of the parties pursuant to the Contract, Addendum no. 1, and purchase order. Defendants ask that they be awarded compensatory damages equal to the difference between the value of the non-conforming goods delivered and the value of the goods represented and warranted by AI and AI-Daiwa, offsets and price reductions as permitted by applicable law; and an order affirming a price reduction for the non-conforming goods and materials delivered to it by AI and AI-Daiwa in an amount to be proven at trial, but not less than $1million; and, disgorgement and restitution of sums paid for devices not manufactured in conformity with Apparent's specifications and quality standards.

12. **Settlement and ADR**

As set forth in the Status Report to the Court Following Private Mediation (Docket No. 33), the parties attended private mediation on January 28, 2014, but were unable to reach a resolution of the case. With knowledge of the mediation, the Court ordered the parties to

complete ADR by July 31, 2014. Defendants and Counterclaimants request clarification as to whether the parties are to engage in another settlement process as such a process may be helpful after joint testing conducted by the Court-appointed expert is completed.

**13.     Consent to Magistrate Judge for All Purposes**

As set forth in the Consent Declination filed by Plaintiff on October 18, 2013, (Docket No. 5), all parties will not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

**14.     Other References**

This section is not applicable.

**15.     Narrowing of Issues**

**Plaintiff's Section**

Plaintiff filed a Motion to Dismiss the fraud allegations in Defendants' recently filed Answer and Counterclaims.

<u>Court-Appointed Technical Expert:</u>  At a Case Management Conference, held on April 7, 2014, the Honorable Yvonne Gonzalez Rogers ordered the parties to meet and confer to provide recommendations for (1) a court-appointed technical expert to serve as a technical expert related to the solar power microgrid inverters or "MGi devices" (the "Products-at-Issue"), and (2) protocols and procedures for the expert's opinion related to the Products-at-Issue, including their design, manufacturing, and testing.  The Parties filed a Stipulation on April 9, 2014, wherein the Parties stated that they propose selecting an expert from Exponent.  (Docket No. 43.)  The Parties proposed possible experts to each other and asked the Court for additional time to review the proposed experts, review for conflicts, and obtain client approval.  The Parties agreed to certain details to be included in the Court-appointed expert's report, as set forth below:

- The Court Expert Report shall describe the test procedures, materials reviewed and relied upon, testing and test results, and identify and explain any conclusions reached by the Court Expert regarding
    - The existence of any defect in the manufactured MGi

- o The cause of any defect identified in the MGi
- o Whether the MGi was manufactured to Apparent's specifications
- o Whether the operability of any component on Apparent's Bill of Materials contributed to the defect or defects (Docket No. 43, 5:3-12.)

**Defendants' Section**

Defendants believe that the issues in this case can be narrowed by dismissing parties not potentially liable for the allegations asserted (see, Defendants' section1); by a determination of what parts of the Contract apply to AI-Daiwa's performance; by a determination of the cause or causes of defects; and, by verification of the goods produced and components actually purchased by AI-Daiwa. Some of these issues can be addressed by the Motions discussed in Defendants' section 4 above, while others will require either good faith cooperation or discovery.

To clarify Plaintiff's representation as to the Court expert, the Court requested the parties stipulate to a Court-appointed or Court-ordered expert to conduct joint testing. The Court did not seek to appoint merely a technical expert to provide guidance to the Court. The parties have submitted a stipulation that describes the selection of the expert and scope of testing.

**16. Expedited Trial Procedure**

This section is not applicable.

**17. Scheduling**

**Plaintiff's Section**

In Plaintiff's previous Case Management Conference Statement, Plaintiffs proposed a Jury Trial starting the week of May 18, 2015, and the following scheduling deadlines and hearing dates are based on that proposed date:

Deadline to file motions to join parties or amend pleadings: May 28, 2014

Merits discovery cutoff: October 17, 2014

Expert disclosure: November 21, 2014

Expert Rebuttal: December 5, 2014

Expert discovery cutoff: January 23, 2015

Dispositive Motions filed by 2/18/2015, Responses filed by 3/18/2015, Replies filed by 4/1/2015

Dispositive Motions heard by: April 15, 2015.

…

<u>On April 7, Judge Yvonne Gonzalez Rogers entered the following schedule in a Case Management and Pretrial Order. (Docket No. 40.)</u>

    CASE MANAGEMENT CONFERENCE: Monday, August 11, 2014 at 2:00 p.m.

    REFERRED TO PRIVATE MEDIATION TO BE COMPLETED BY: July 31, 2014

    LAST DAY TO JOIN PARTIES OR AMEND PLEADINGS: Must obtain leave

    NON-EXPERT DISCOVERY CUTOFF: October 31, 2014

    DISCLOSURE OF EXPERTS (RETAINED/NONRETAINED):

        Opening: October 1, 2014

        Rebuttal: October 17, 2014

    EXPERT DISCOVERY CUTOFF: October 31, 2014

    DISPOSITIVE MOTIONS TO BE HEARD BY: December 2, 2014

    COMPLIANCE HEARING:  Friday, January 16, 2015 at 9:01 a.m.

    JOINT PRETRIAL CONFERENCE STATEMENT: Friday, January 23, 2015

    PRETRIAL CONFERENCE: Friday, February 6, 2015 at 9:00 a.m.

    TRIAL DATE AND LENGTH: Monday, February 23, 2015 at 8:30 a.m. for 5 days (Jury Trial)

    **Defendants' Section**

Defendants proposed the schedule set forth below. At the Initial Case Management Conference, the Court advised that it was scheduled for a long-cause complex action in 2015 and needed to complete civil actions by the anticipated start of the long-cause action. As a result, Defendants consented to the Court's schedule but asked to move the date for hearings on dispositive motions to December 15, 2014, to allow the parties to receive discovery responses before filing motions. The Court advised that it would consider the timing of filing dispositive

motions in conjunction with the pre-filing motion conference the Court required. To the extent possible, Defendants and Counterclaimants request this Court to extend the motion scheduling. :

Completing discovery: December 15, 2014

Expert disclosure: January 15, 2015

Expert rebuttal disclosure: January 31, 2015

Expert discovery cut off: February 28, 2015

Substantive Motions heard: May 31, 2015 (Dispostive Motions filed: March 31, 2015, opposition April 21, 2015, replies May 5, 2015)

Pre-trial: June 21, 2015

Trial: July 1, 2015

### 18. Trial

#### Plaintiff's Section

Plaintiff anticipates a 5-7 day trial. Plaintiff requested a jury trial.

#### Defendants' Section

Defendants and Counterclaimants anticipate trial to require 5 court days and have also requested a jury trial.

### 19. Disclosure of Non-party Interested Entities or Persons

#### Plaintiff's Section

Advanced Innovations, USA, LLC, was named in Defendants' Counterclaims and Advanced Innovations, Ltd., which the Defendants state is an Irish company

#### Defendants' Section

Daiwa, Ltd and Gold Wealth Industries, Ltd are entities related to AI-Daiwa. Daiwa Ltd is a partner of AI-Daiwa and AI-Daiwa formed Gold Wealth to 'ring fence' its operations with Apparent. Advanced Innovations, Ltd is an Irish company that Defendants believe is AI's parent company. In addition, Advanced Innovations (USA), LLC's members have utilized a company EMK, LLC to perform some functions. Defendants and Counterclaimants are presently unaware of the relationship between these entities and, possibly, AI-Daiwa and reserve their right to

amend their Counterclaim based on discovery.

**20. Other**

This section is not applicable.

Dated: May 1, 2014                    ROPERS, MAJESKI, KOHN & BENTLEY


By:  /s/ Lael D. Andara
    CHI-HUNG A. CHAN
    LAEL D. ANDARA
    MICHAEL D. KANACH
    Attorneys for Plaintiff AI-DAIWA, LTD.


Dated: May 1, 2014                    DESOUZA LAW OFFICES, PC


By:  /s/ Jacqueline deSouza
JACQUELINE DESOUZA
    Attorneys for Defendants
    Apparent Inc., Apparent Energy Inc.,
    Apparent Solar Inc., Xslent Energy
    Technologies, LLC, Apparent Solar
    Investments (II), LLC erroneously sued
    herein as Apparent Solar Investments, LLC
    and Counterclaimants Apparent Inc and
    Apparent Energy Inc.

RC1/7443814.3/MK6

JOINT CASE MANAGEMENT CONFERENCE
STATEMENT - CV13-4156 VC

## CASE MANAGEMENT ORDER

The above **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER** is approved as the Case Management Order for this case and all parties shall comply with its provisions.

**IT IS SO ORDERED.**

Dated: _____

                                          Honorable Vince Chhabria
                                          United States District Court Judge