1    JACQUELINE DESOUZA, State Bar No.:133686
     DESOUZA LAW OFFICES, a professional corporation
2    1615 Hopkins Street
     Berkeley, CA 94707
3    Tel/Fax:    (510) 649-3420
     Email: jdesouza@dlawcorp.com
4
     Attorneys for Defendants
5    Apparent Inc; Apparent Energy Inc;
     Apparent Solar Inc; Xslent Energy Technologies, LLC,
6    Apparent Solar Investments (II), LLC erroneously sued
     herein as Apparent Solar Investments, LLC and Counterclaimants
7    Apparent Inc, and Apparent Energy Inc

8

9                        IN THE UNITED STATES DISTRICT COURT

10                       NORTHERN DISTRICT OF CALIFORNIA

11   AI-DAIWA, LTD                          Case No. CV 13-04156 (**VC**)

12              Plaintiff,

13        vs.                               AMENDED ANSWER TO FIRST
                                            AMENDED COMPLAINT AND
14                                          COUNTERCLAIM FOR BREACH OF
     APPARENT, INC., a Delaware corporation;   CONTRACT; BREACH OF EXPRESS
15   APPARENT ENERGY, INC., a Delaware      AND IMPLIED WARRANTIES; FRAUD –
     corporation; APPARENT SOLAR, INC., a   MISREPRESENTATION AND
16   Delaware Corporation; APPARENT SOLAR   CONCEALMENT; NEGLIGENT
     INVESTMENTS, LLC, a Hawaii limited     MISREPRESENTATION; UNJUST
17   liability company; XSLENT, LLC, a Delaware   ENRICHMENT; UNFAIR BUSINESS
     limited liability company; XSLENT ENERGY   PRACTICES; and DECLARATORY
18   TECHNOLOGIES, LLC, a Delaware limited  RELIEF.
     liability company; and DOES 1-10 inclusive,
19
                                            JURY TRIAL DEMANDED
20              Defendants.
     _____/  Complaint filed September 9, 2013
21   APPARENT, INC., a Delaware corporation;   Counterclaim filed March 24, 2014
     APPARENT ENERGY, INC., a Delaware
22   corporation,

23              Counterclaimants,

24        vs.

25   AI-DAIWA, LTD; ADVANCED
     INNOVATIONS USA, LLC; and ROES 1-10
26   inclusive.
     _____/
27

28

Apparent Inc., Apparent Energy Inc, Apparent Solar Inc, Xslent Energy Technologies, LLC, and Apparent Solar Investments (II), LLC erroneously sued herein as Apparent Solar Investments, LLC referred to in this answer as ("Apparent") answer Plaintiff's Complaint, subject to its right to amend this answer upon subsequently discovered evidence:

In response to paragraph 1, Apparent admits the allegations of this paragraph upon information and belief.

Apparent admits paragraph 2.

Apparent denies the allegations of paragraph 3.

In response to paragraph 4, Apparent admits that Xslent Energy Technologies, LLC is a limited liability company formed under the laws of the State of Delaware. Apparent lacks information and belief to respond to the remaining allegations in paragraph 4.

Apparent lacks information or belief to respond to the allegations in paragraph 5.

Apparent denies the allegations in paragraph 6 insofar as they allege any relationship between an entity 'Apparent Solar Investments, LLC' and Apparent or any agency or employment relationship between 'Xslent LLC' and Apparent.

Apparent admits the allegations of paragraph 7.

In response to paragraph 8, Apparent denies that a substantial number of events, representations, or omissions occurred in this judicial district, but does not object to venue.

Apparent denies the allegations of paragraph 9.

Apparent lacks information and belief as to AI-Daiwa's intent and, so, denies the allegations of paragraph 10.

Apparent lacks information or belief to respond to the allegations in paragraph 11 and, so, denies the allegations of paragraph 11.

Apparent admits that it purchased goods and material from AI-DAIWA that were delivered in 2013, but denies the remaining allegations of paragraph 12.

In response to paragraph 13, Apparent incorporates its responses to paragraphs 1-12 above.

In response to paragraph 14, Apparent admits that pursuant to its Supply Chain Agreement and Addendum no.1, it executed an amended purchase order for goods and material. Apparent denies the remainder of the allegations in paragraph 14.

In response to paragraph 15, Apparent admits that AI-Daiwa made shipments of goods and materials pursuant to the terms of the Supply Chain Agreement and Addendum no.1. Apparent denies the remaining allegations of paragraph 15.

Apparent denies the allegations of paragraph 16.

Apparent lacks information or belief to respond to the allegations of paragraph 17 and so denies the allegations in this paragraph.

In response to paragraph 18, Apparent admits that it paid AI-Daiwa $500,000 in December of 2012 for goods and materials shipped in January of 2013. Apparent admits that a portion of the payment was allocated for goods and materials shipped and for freight. Apparent denies the remaining allegations of this paragraph.

In response to paragraph 19, Apparent denies each allegation.

In response to paragraph 20, Apparent denies each allegation.

In response to paragraph 21, Apparent incorporates each response to paragraphs 1-20 above.

In response to paragraph 22, Apparent denies that Dan Tran is an officer of Apparent. Apparent lacks information or belief to respond to the remaining general allegations of paragraph 22 and so denies each allegation.

In response to paragraph 23, Apparent lacks information or belief to respond to the general allegations of this paragraph and so denies each allegation.

In response to paragraph 24, Apparent lacks information or belief to respond to the general allegations of this paragraph and so denies each allegation.

In response to paragraph 25, Apparent denies the allegations reciting amounts paid and owing. Apparent lacks information or belief to respond to the remaining allegations of this paragraph and so denies each allegation.

In response to paragraph 26, Apparent denies each allegation.

In response to paragraph 27, Apparent denies each allegation.

In response to paragraph 28, Apparent incorporates its responses to paragraphs 1-27 above.

In response to paragraph 29, Apparent denies that Dan Tran is an officer of Apparent. Apparent lacks information or belief to respond to the remaining general allegations of paragraph 29 and so denies each allegation.

In response to paragraph 30, Apparent lacks information or belief to respond to the general allegations of this paragraph and so denies each allegation.

In response to paragraph 31, Apparent lacks information or belief to respond to the general allegations of this paragraph and so denies each allegation.

In response to paragraph 32, Apparent denies the allegations reciting amounts paid and owing. Apparent lacks information or belief to respond to the remaining allegations of this paragraph and so denies each allegation.

In response to paragraph 33, Apparent denies each allegation.

In response to paragraph 34, Apparent incorporates each response to paragraphs 1-33 above.

In response to paragraph 35, Apparent denies the allegations of this paragraph.

In response to paragraph 36, Apparent denies the allegations of this paragraph.

In response to paragraph 37, Apparent admits a controversy exists between these parties but denies that the description of the controversy is fully stated in this paragraph and, so, denies the remaining allegations in paragraph 37.

In response to paragraph 38, Apparent denies the allegations in paragraph 38.

In response to paragraph 39, Apparent lacks information or belief to respond to the allegations of this paragraph and, so, denies each allegation in paragraph 39.

In response to paragraph 40, Apparent incorporates its responses to paragraphs 1-39 above.

In response to paragraph 41, Apparent denies the allegations of paragraph 41.

In response to paragraph 42, Apparent lacks information or belief as to AI-Daiwa's intent and, further, denies each allegation of this paragraph.

In response to paragraph 43, Apparent lacks information or belief to respond to the allegations of this paragraph and, so, denies each allegation.

In response to paragraph 44, Apparent denies the allegations of this paragraph.

In response to paragraph 45, Apparent incorporates its responses to paragraphs 1-44 above.

In response to paragraph 46, Apparent admits that pursuant to the terms of the Supply Chain Agreement and Addendum No. 1, it issued an amended purchase order to AI-Daiwa. Apparent denies the remaining allegations of this paragraph.

In response to paragraph 47, Apparent admits that AI-Daiwa delivered goods and materials in 2012. Apparent denies the remaining allegations of paragraph 47.

In response to paragraph 48, Apparent denies the allegations of paragraph 48.

In response to paragraph 49, Apparent denies the allegations of paragraph 49.

In response to paragraph 50, Apparent incorporates its responses to paragraphs 1-49 above.

In response to paragraph 51, Apparent denies the allegations of paragraph 51.

In response to paragraph 52, Apparent denies the allegations of paragraph 52.

## AFFIRMATIVE DEFENSES

As a first affirmative defense to each cause of action in Plaintiff's First Amended Complaint ("FAC"), Plaintiff fails to allege facts sufficient to constitute one or more cause of action against Apparent.

As a second affirmative defense to each cause of action in Plaintiff's FAC, there is a lack of privity between Plaintiff and Apparent Solar, Inc., Apparent Energy, Inc., Apparent Solar Investments (II), LLC erroneously sued herein as Apparent Solar Investments, LLC, and Xslent Energy Technologies.

As a third affirmative defense to Plaintiff's FAC, Plaintiff fails to allege fraud, misrepresentation, or concealment with specificity so as to constitute one or more cause of action premised on fraudulent conduct.

As a fourth affirmative defense to each cause of action in Plaintiff's FAC, Plaintiff is estopped from asserting the claims upon which each cause of action is based.

As a fifth affirmative defense to each cause of action in Plaintiff's FAC, Plaintiff has waived claims upon which each cause of action is based.

As a sixth affirmative defense to Plaintiff's FAC, each cause of action therein is barred by the doctrine of laches.

As a seventh affirmative defense to Plaintiff's FAC, Plaintiff failed to take all steps to address and correct defects to workmanship and failed to warn of risks before delivering goods and materials.

As an eighth affirmative defense to Plaintiff's FAC, Plaintiff failed to mitigate any damage allegedly suffered.

As a ninth affirmative defense to Plaintiff's FAC, Defendants plead a failure of consideration caused by Plaintiff's conduct and failure to perform.

As a tenth affirmative defense to Plaintiff's FAC, Defendants plead that any failure to perform on their part was caused by and due to Plaintiff's conduct and failure to perform (Defendants were prevented from performing by Plaintiff's conduct) and, Defendants were permitted to suspend performance due to Plaintiff's failure to perform.

As an eleventh affirmative defense to Plaintiff's FAC, Defendants plead that Plaintiff committed an anticipatory breach by failing to perform, warranting termination of all agreements and business transactions.

As a twelfth affirmative defense to Plaintiff's FAC, Defendants plead such offsets and price reductions due them pursuant to the United Nations Convention on Contracts for the International Sale of Goods ("CISG") see, e.g. Article 50; and/or, the Uniform Commercial Code ("UCC") see e.g. California Commercial Code section 2714, for Plaintiff's failure to deliver goods and materials in conformity with Apparent's specifications; and offsets and price reductions due to the parties' July 2011 Supply Chain Agreement which governs the manufacture of products that are the subject of this action.

As a thirteenth affirmative defense to Plaintiff's FAC, Defendants presently have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, defenses available. Each Defendant reserves the right to assert additional defenses in the event discovery indicates they would be appropriate.

## COUNTERCLAIM

COMES NOW APPARENT INC and APPARENT ENERGY INC, which allege the following:

1. Counterclaimants Apparent Inc and Apparent Energy Inc ("Apparent Inc") are Delaware corporations. Apparent Inc's principal place of business is in Marin County.

2. Apparent Inc is informed and believes Counter-defendant AI-Daiwa is a foreign corporation with its principal place of business in Hong Kong, China.

3. Apparent Inc is informed and believes Counter-defendant Advanced Innovations USA, LLC is a limited liability company formed under the laws of the State of Alabama, with its principal place of business in Madison County, Alabama.

4. The true names and capacities, whether individual, corporate, associate or otherwise, of Counter-defendants Roes 1 through 10, inclusive, are unknown to Apparent Inc which sues said Counter-defendants by fictitious names. Apparent Inc will seek leave of the Court to amend this Counterclaim when the names of Counter-defendants have been ascertained.

5. Apparent Inc is informed and believes and upon such information and belief alleges that at all times mentioned in this Counterclaim, Counter-defendants Roes 1 through 10 were agents, employees, servants, consultants, principals, employers, successors in interest of each of their co-counter-defendants and each counter-defendant has ratified, adopted, or approved the acts or omissions set forth in this Counterclaim and each Counter-defendant when acting as a principal was negligent in the selection, supervision, and management of every other Counter-defendant . Apparent Inc is further informed and upon such information alleges that each of these fictitiously named Counter-defendants is responsible in some manner for acts, omissions, or indebtedness as alleged in this Counter-complaint and that each Counter-defendant is responsible and indebted to Apparent Inc as set forth.

6. This Court has diversity jurisdiction over this action by virtue of 28 U.S.C. section 1332 as the counterclaim involves a civil action between citizens of different states and the amount in controversy exceeds $75,000.

7. Counter-defendants selected venue by filing their complaint in this Court, waiving any other forum. Apparent Inc does not dispute the choice of venue as set forth in Counter-defendants First Amended Complaint.

### GENERAL ALLEGATIONS

8. Apparent Inc has developed and patented intellectual property and applied that intellectual property in an energy platform that extracts unstable energy from solar panels, converts and

manages the phases of power to produce the type of energy wave needed by the customer or grid. Part of the energy platform includes a microgrid inverter ("MGi") model 220 or Atira 5328, which has been certified and listed to UL standards. The MGi has been manufactured and installed in various locations since 2009. In 2010, Apparent Inc was introduced to Advanced Innovations USA, LLC ("AI") a contract manufacturer.

9.   Over several months and meetings with Robert O'Donnell, Jim Devlin, and Jeff Barrick all of whom were and/or are officers of AI, Apparent Inc made very clear that it had extremely limited finances, required a high quality manufacturer and aggressive cost reduction to encourage the adoption of its products.  Ultimately, based on AI's commitment to provide a quality product at a specified price, AI and Apparent Energy Inc entered into a Supply Chain Agreement (the "Contract") in July of 2011. Apparent Energy Inc assigned the Contract to Apparent Inc. The Contract includes an integration/modification clause and an Order of Precedence intended to eliminate questions about the order of ancillary documents such as purchase orders, forecasts, invoices that may be exchanged over the course of the manufacturing process. These terms were included in the Contract because the parties intended the Contract to control all of the material terms associated with the supply chain services and manufacturing.

10.   The Contract describes the MGi product specifications, and imposes detailed quality and testing standards, including .03% per million acceptable failure rate and 0% dead on arrival and early failure rates. AI agreed to a 24 month warranty period running from the date of delivery subject to being extended to 15 years based on AI's performance of accelerated life testing. For any defective devices, AI agreed to replace or repair the product. AI agreed to a policy and procedure that specified 1% of the same product installed or shipped during any 4-week period and containing repetitive defects in AI supplied material or workmanship constituted a mass defect and warranted suspension of the Contract.  And, as to price, AI demanded a higher price for the first several thousand devices produced than it originally committed to but agreed to reduce this price over the manufacturing process and to defer payment of a portion of the price of each device.

11. In July of 2011, pursuant to the Contract, Apparent Inc issued a purchase order to AI. AI initially manufactured the MGi through "Suga" a manufacturer it selected. In December of 2011, AI demanded the Contract be assigned to a joint venture it had created with Daiwa, Ltd. ("AI-Daiwa") Apparent Inc was reluctant to assign the Contract or the purchase order to AI-Daiwa. To convince Apparent Inc to assign the purchase order, Robert O'Donnell, a member of AI, assured Apparent, Inc that he was a director of AI-Daiwa and had oversight over the supply chain services and manufacturing. Mr. O'Donnell represented AI-Daiwa would perform the Contract consistently with its terms, would produce high quality products to Apparent's specifications and quality and testing standards, would provide the supply chain services (including component sourcing, cost reduction, design, and accelerated life testing) and would engage in manufacturing cost reductions. Mr. O'Donnell represented that AI-Daiwa had extensive industry resources including design resources and would use these resources to reduce costs, secure new lines of components, and maintain quality. Based on these promises and guarantees of performance, Apparent assigned the initial purchase order to AI-Daiwa: Apparent entered into Addendum No. 1 to the Contract that specified the purchase order would be re-issued to AI-Daiwa and AI, the assigned purchase order would be governed by the terms of the Contract, and AI would hold harmless and indemnify Apparent Inc from AI-Daiwa's failure to perform.

12. In reliance on AI's and AI-Daiwa's representations that AI-Daiwa could and would perform, Apparent Inc began securing contracts for the installation of MGi products.  The promises, however, were false when made. Apparent Inc is informed and believes that AI and Daiwa Ltd formed the joint venture to monetize Apparent Inc's purchase order and Contract. AI and AI-Daiwa made the representations to induce Apparent Inc to assign the purchase order without intending to perform key provisions such as quality manufacturing to Contract specifications, cost reductions, accelerated life testing, all as specified in the purchase order and Contract. AI's and AI-Daiwa's performance illustrates the falsity of their representations.

13. Starting with its first delivery received in or about April of 2012 Apparent Inc discovered that some of the MGi products AI-Daiwa manufactured and delivered did not meet the Contract

specifications.  As an example, in one delivery of 160 MGi products 11 MGi products, or 14% of the shipment, were defective.  The MGi product defects consisted of improper potting and other workmanship defects to falsification of testing results (products were listed as passing tests required by the Contract when they had not been tested). In some instances the failure to meet specifications was evident upon delivery from the fact the product leaked potting material or would not work or communicate. In other instances the failures to meet specifications were identified after the product was installed, for example the products stopped communicating after being installed. In each instance, Apparent Inc was unable to use the devices and notified AI and AI-Daiwa. Teams were assigned to identify root causes of the defects so that remedial measures in the manufacturing process could be developed and implemented. These processes were unreasonably labored, delayed by AI-Daiwa, and took unreasonably lengthy periods of time. For example, Apparent Inc's complaints of multiple defects in mid-2012 resulted in a remedial measures report that AI-Daiwa issued in February of 2013. None of the recommendations in this report were implemented by AI or AI-Daiwa.

14. From on or about April of 2012 and to November of 2012, the percentage of defective products identified at delivery and after being installed increased to over 5% of the MGi products delivered to Apparent Inc. in the same period.  Apparent's root cause analysis identified poor workmanship and falsification of the testing process specified in the Contract as well as tests adopted by Apparent, AI and AI-Daiwa during the course of manufacturing up and to November 30, 2012. For example, the defective MGi products had improper soldering that damaged components or prevented the product from operating (working or communicating). The defects should have been identified during the manufacturing testing process by the tests required in the Contract and as agreed to by Apparent Inc, AI, and AI-Daiwa. The type of defect and the testing reports show that AI and AI-Daiwa did not perform tests required by the Contract and as agreed by the parties and the results were being falsified.

15. On or about November of 2012, Apparent Inc requested a container shipment but only if each MGi product was re-tested per the tests required by the Contract before being shipped. Apparent Inc's request was the result of the growing percentage of defects in shipped products

in the period starting on or about April of 2012 to November of 2012. In December of 2012 in response to Apparent Inc's request, Robert O'Donnell, and James Chong (among others) of AI-Daiwa agreed to re-test each MGi product per the Contract requirements, including Apparent NPO Test Procedures Rev P1.3, and QA AQL select check 125 pieces. Also in December of 2012, Mr. O'Donnell and Mr. Chong among others provided false email and oral representations that AI's and AI-Daiwa's staff, including Felix Lau and Seamus Ennis, re-tested MGi products in December of 2012 using tests required by the Contract including Apparent NPO Test Procedures Rev P1.3, and QA AQL select check 125 pieces and all of the MGi products had passed all tests. Passing these tests meant that upon delivery the MGi products would operate, i.e., turn on and communicate. Based on their involvement in the manufacturing process, Mr. O'Donnell and Mr. Chong knew the products had not been re-tested and had no reason to believe the MGi products had passed the tests required by the Contract including Apparent NPO Test Procedures Rev P1.3, and QA AQL select check 125 pieces. They made the false representations in order to secure payment from Apparent Inc for the shipment and to off load products knowing they did not meet Contract specifications.

16. In reliance on the representations made by Mr. O'Donnell, Mr. Chong, among others, that AI and AI-Daiwa would re-test, that the re- testing was completed, and that the MGi products passed the re-tests, Apparent Inc agreed to pay and paid the inflated cost for the shipment. Upon receipt of the shipment in January of 2013, Apparent Inc discovered that a substantial percentage of the MGi products, over 10% of the shipment, did not meet Contract specifications in that they were dead on arrival or did not communicate and could not be used. The products could not have been tested as required by the Contract and could not have passed the tests required by the Contract or as AI and AI-Daiwa represented in December of 2012.

17. On or about January of 2013, following receipt of the shipment and discovery of products not manufactured to Contract specifications, Apparent Inc notified AI and AI-Daiwa. Apparent and AI-Daiwa began another root cause analysis. Again this process was unreasonably labored and delayed by AI-Daiwa. By July of 2013 no conclusion regarding the root cause had been reached. In July of 2013 and again August of 2013, Apparent Inc advised AI and AI-Daiwa

that the magnitude of the failure rate exceeded 20% of the shipment, and triggered mass defect provisions of the Contract. Apparent Inc advised and it could no longer accept manufactured products from AI or AI-Daiwa unless the products were tested by a third-party before being delivered.  Apparent Inc proposed a new stress test in addition to tests required by the Contract to be conducted by a third party on the completed MGi products to identify defective workmanship or components. Initially AI and AI-Daiwa agreed, but after running internal preliminary tests and confirming to Apparent the extent of defects, AI and AI-Daiwa refused to proceed with third party testing. Instead, AI and AI-Daiwa demanded that Apparent Inc accept the defectively manufactured products. Apparent Inc was forced to cease entering into contracts for the installation of MGi products.

18.  At the same time and over the course of the manufacturing, AI and AI-Daiwa did not provide supply chain services, reduce costs, perform accelerated life testing, and the payment process was riddled with accounting issues. Although AI and AI-Daiwa acknowledged Apparent Inc's right to offset the costs of excess inventory and returned defective products, AI and AI-Daiwa delayed issuing credits and offsets. AI requested Apparent make payments to it for goods and materials shipped by AI-Daiwa but did not credit the payments to AI-Daiwa. AI-Daiwa objected to AI's confirmation of the payments made. And, Advanced Innovations, Ltd (AI's Irish parent company) demanded payments be issued to it and not AI or AI-Daiwa. All of which resulted in disputes between the parties about what was owed for goods and materials shipped. As a result, in the latter part of 2012, Apparent Inc and AI-Daiwa (Frederick Wan, Herman Lau, and Robert O'Donnell) began a reconciliation of the excess inventory, returns, goods and material shipped, and payments. An interim reconciliation was completed in 2012 showing Apparent Inc owed about $200,000 for goods and material shipped which was to be reduced by offsets for defective devices that were in the process of root cause analysis.  In or about January of 2013, Robert O'Donnell confirmed the interim reconciliation. When AI and AI-Daiwa did not complete the root cause analysis of the January 2013 shipment, and refused to complete the third party testing, the extent of defective devices and credits was not ascertained. The market value of the products delivered by AI and AI-Daiwa is $0 as they do

not conform to Apparent's specifications. As a result, Apparent has overpaid AI and AI-Daiwa for goods and materials shipped by sums that will be presented at trial once the scope of defects has been ascertained.

**FIRST CAUSE OF ACTION**

(Breach of Contract as to AI and AI-Daiwa)

19. Apparent Inc re-alleges and re-incorporates paragraphs 1-18 above as though fully stated herein.

20. In July of 2011, Apparent Inc entered into a written Contract with AI, governed by California law. The Contract, among other terms, required AI to provide contract manufacturing consistent with Apparent Inc's specifications, quality standards; to provide supply chain services; to reduce costs based on actual costs of manufacturing; to provide a 24 month express warranty on workmanship and to address defects that were produced on a limited or mass scale.

21. In December of 2011, at AI's demand, the parties agreed to reissue the purchase order pursuant to the Contract to AI and AI-Daiwa. The parties entered into an addendum that specified that AI and AI-Daiwa would be bound by the terms of the Contract for all purposes of performing the purchase order. Thus, AI, AI-Daiwa, and Apparent Inc agreed that AI and AI-Daiwa would be required to manufacture the MGi products in conformity with Apparent Inc's specifications, quality and testing standards. AI and AI-Daiwa was required to provide a 24 month express warranty and comply with the mass return policy, that AI and AI-Daiwa would engage in cost reduction and accelerated life testing, and AI and AI-Daiwa would be paid in conformity with the terms of the Contract.

22. Apparent Inc fully performed all terms of the Contract and Addendum no 1 with AI and AI-Daiwa or was excused from doing so because of AI's and AI-Daiwa's failure to account for credits, excess inventory, and payments; AI's and AI-Daiwa's failure to deliver MGi devices in conformity with Apparent Inc's specifications; and AI's and AI-Daiwa's failure to implement and perform quality and testing standards, the express warranty and mass defect provisions, or cost reduction and accelerated life testing.

23. AI and AI-Daiwa were not excused from performing the terms of the Contract and Addendum No. 1, and breached the Contract and Addendum No. 1 by, among other ways, not securing a contract manufacturer to produce MGi products in conformity with Apparent Inc's specifications or quality and testing standards; by not providing supply chain services; by not crediting Apparent Inc with reduced costs, not properly accounting for payments and credits; not reducing price as required by the Contract; by failing to conduct accelerated life testing; and, by failing to implement the quality, warranty, and mass defect procedures.

24. As a result of AI's and AI-Daiwa's conduct, Apparent Inc has incurred excessive costs associated with manufactured products that do not meet specification, scrapping MGi products. Apparent Inc has not received credit for products that do not meet its specifications. Apparent Inc has been unable to use MGi products that it has paid for. Apparent Inc has incurred excessive costs testing and evaluating MGi products in an attempt to resolve AI's and AI-Daiwa's workmanship issues. And, Apparent Inc was forced to delay or stop contracting and sales due to its inability to use the products manufactured by AI and AI-Daiwa.

25. As a result of AI's and AI-Daiwa's breach, Apparent Inc is entitled to the difference of the value of goods and materials actually delivered and the value of goods and materials AI and AI-Daiwa represented and warranted they would deliver in conformity with Apparent Inc's specifications as permitted by Article 50 of CISG and/or section 2714 of the UCC as determined at trial. Apparent Inc is entitled to damages caused by AI's and AI-Daiwa's failure to perform consisting of the payments made to AI and AI-Daiwa for non-conforming devices, consequential and incidental damages subject to proof at trial. As a result of AI's and AI-Daiwa's breaches of the Contract and Addendum No. 1, Apparent was entitled to suspend and terminate the parties' agreements.

Wherefore, Apparent Inc prays for judgment and an award of damages as set forth below.

## SECOND CAUSE OF ACTION

Breach of Express and Implied Warranties as to AI and AI-Daiwa

26. Apparent Inc re-alleges and re-incorporates paragraphs 1-25 above as though fully stated herein.

27. The Contract, Addendum No. 1, and re-assigned purchase order specified that AI and AI-Daiwa would warrant the workmanship of the products manufactured for 24 months from the date of delivery. The warranty specified that the workmanship would meet Apparent Inc's specifications, quality, and testing standards. In addition, California law imposes an implied warranty of merchantability upon the products manufactured by AI and AI-Daiwa for Apparent.

28. Apparent Inc reasonably relied upon the affirmation and promise made by AI and AI-Daiwa to manufacture to Apparent Inc's specifications, quality, and testing standards. By the conduct described herein, AI and AI-Daiwa breached the express warranty made to Apparent Inc. By the conduct described herein, AI and AI-Daiwa also breached the implied warranty of merchantability in that the failure to manufacture to Apparent Inc's specifications resulted in fundamental defects that rendered them unfit for their intended purpose.

29. Upon discovery, Apparent, Inc notified AI and AI-Daiwa of its breach. AI and AI-Daiwa refused to remediate defects. As a result, Apparent, Inc has been damaged in an amount equal to the difference between the value of the non-conforming goods delivered to Apparent Inc and the value of the goods warranted by AI and AI-Daiwa. Apparent Inc is also entitled to compensatory damages equal to the payments made to AI and AI-Daiwa for non-conforming products and to reduce the price of the non-conforming products. Apparent has also incurred incidental and consequential damages in an amount to be established at trial.

Wherefore, Apparent Inc prays for judgment against AI and AI-Daiwa as set forth below.

### THIRD CAUSE OF ACTION

Breach of Implied Covenant of Good Faith and Fair Dealing as to AI and AI-Daiwa

30. Apparent Inc re-alleges and re-incorporates paragraphs 1-29 above as though fully stated herein.

31. As is set forth more completely above, AI and AI-Daiwa were bound by a valid contract under California law, under which their obligations were as described herein. An implied covenant of good faith and fair dealing runs with every contract governed by California law.

32. AI and AI-Daiwa violated their duties to act fairly and in good faith, and unfairly interfered with Apparent Inc's right to obtain the benefit of the bargain by failing to manufacture and deliver products that met the parties agreed-upon specifications, quality and testing standards; by failing to reduce costs as set forth in the Contract; by failing to conduct accelerated life testing; and by failing to implement warranty and mass defect procedures upon notice of defects. AI and AI-Daiwa obstructed returns, offsets, and payments and engaged in conduct with putative customers to interfere with Apparent Inc's business opportunities.

33. Apparent, Inc has been damaged in an amount equal to the difference between the value of the non-conforming goods delivered to Apparent Inc and the value of the goods represented and warranted by AI and AI-Daiwa. Apparent Inc is entitled to compensatory damages equal to the amounts paid for non-conforming MGi products and to reduce the price for the non-conforming MGi products. Apparent Inc has also incurred incidental and consequential damages in an amount to be established at trial.

Wherefore, Apparent Inc prays for judgment against AI and AI-Daiwa as set forth below.

### FOURTH CAUSE OF ACTION

Fraud- Misrepresentation/Concealment as to AI and AI-Daiwa

34. Apparent Inc re-alleges and re-incorporates paragraphs 1-33 above as though fully stated herein.

35. On or about December 2011, Robert O'Donnell a member of AI and a Director of AI-Daiwa demanded that the Contract and purchase order be assigned to AI-Daiwa, Ltd a joint venture AI formed with Daiwa, Ltd. Apparent Inc was reluctant to assign the Contract or purchase order. Mr. O'Donnell made false representations to Apparent Inc to induce it to assign the purchase order, including that AI-Daiwa would perform all of the terms of the Contract including manufacturing MGi products to Apparent Inc's specifications, quality and testing standards; that AI-Daiwa had design services that it would use to assist Apparent in its cost reduction and to maintain quality standards; that AI-Daiwa had considerable resources and industry leverage and would support Apparent Inc's manufacturing process by reducing costs, and conducting accelerated life testing.

36. Mr. O'Donnell made these representations intentionally, knowing they were false and without any belief in their accuracy, only to induce Apparent Inc to assign the purchase order to AI-Daiwa.

37. Apparent Inc relied upon Mr. O'Donnell's representations and assigned the purchase order to AI-Daiwa, relying on AI-Daiwa to produce MGi products to its Contract specifications–all to its detriment. Specifically, from its first shipment on or about April of 2012 to November of 2012, AI-Daiwa did not produce MGi products in conformity with Apparent Inc's Contract specifications; AI and AI-Daiwa failed to comply with the Contract's quality and testing standards and AI and AI-Daiwa did not test MGi products in conformity with the requirements of the Contract as agreed by the parties; AI and AI-Daiwa delayed identifying root causes when defects were identified, delayed implementing remedial measures to the manufacturing process; and, AI and AI-Daiwa did not provide supply chain services including engaging in cost reduction,  design, or accelerated life testing. If Apparent Inc had known representations made by Mr. O'Donnell about AI-Daiwa's ability and willingness to perform were false and made without any basis for belief, it would not have entered into Addendum no. 1 and assigned the purchase order to AI-Daiwa.

38. On or about November of 2012, Apparent Inc requested a container shipment of MGi products. Due to the increasing number of defective products that AI and AI-Daiwa delivered from their first shipment on or about April of 2012 to November of 2012, Apparent Inc requested that each MGi product be re-tested before shipment. In December of 2012 in response to Apparent Inc's request, Robert O'Donnell, Frederick Wan, directors of AI-Daiwa and officers of Daiwa agreed to deliver the container at an inflated cost, requiring Apparent Inc to pay for the devices in advance and to pay for goods and materials previously shipped before determining the extent of defects and offsets. Robert O'Donnell, and James Chong (among others) of AI-Daiwa also agreed to re-test each MGi product per the Contract requirements including Apparent NPO Test Procedures Rev P1.3, and QA AQL select check 125 pieces. In December of 2012, Mr. O'Donnell and Mr. Chong among others provided false email and oral representations that AI and AI-Daiwa (specifically Felix Lau and Seamus Ennis among others) re-tested each MGi

product in December of 2012 per the Contract, including Apparent NPO Test Procedures Rev P1.3, and QA AQL select check 125 pieces, and that all of the MGi products passed all tests. Passing these tests meant that upon delivery to Apparent Inc, the MGi product would turn on and would communicate. Based on their involvement in the manufacturing process, Mr. O'Donnell and Mr. Chong knew that all the MGi products had not been re-tested; they knew that all of the MGi products shipped to Apparent Inc had not passed the testing required by the Contract and re-testing they agreed to; and, they had no reason to believe such representations. They made the false representations in order to secure inflated payments from Apparent Inc for the shipment and to off-load the MGi products knowing they did not meet specifications.

39. In reliance on the representations from Mr. O'Donnell, Mr. Chong, among others, that AI and AI-Daiwa would re-test the MGi products as described in paragraph 38, that the re-testing was completed, and that the MGi products passed the re-tests (including Apparent NPO Test Procedures Rev P1.3, and QA AQL select check 125 pieces) Apparent Inc agreed to pay and paid an inflated sum for the shipment. Upon receipt of the shipment in January of 2013, Apparent Inc discovered that a substantial percentage of the MGi products, over 10%, did not meet Contract specifications in that they were dead on arrival or did not communicate and could not be used. The products could not have been re-tested per Contract requirements and could not have passed the re-testing as AI and AI-Daiwa represented in December of 2012. In addition to MGi product that failed upon delivery in January of 2013, additional MGi products from the January 2013 shipment failed to work or communicate after delivery and installation.

40. On or about January of 2013, following delivery of the shipment and discovery of products not manufactured to Contract specifications, Apparent notified AI and AI-Daiwa. Apparent and AI-Daiwa began another root cause analysis. Again this process was unreasonably labored and delayed by AI-Daiwa. By July of 2013 no conclusion regarding the root cause had been reached. In July of 2013 and again August of 2013, Apparent Inc advised AI and AI-Daiwa that additional products installed failed resulting in a failure rate in excess of 20% of the January 2013 shipment, and triggered mass defect provisions of the Contract. Except for the false and reckless representations made by AI and AI-Daiwa agreeing to and confirming each

MGi product had been re-tested to Contract requirements, Apparent Inc would not have paid the inflated price for the MGi products, would not have paid for goods and materials shipped without a reconciliation of the defects, and would not have accepted MGi products that were not manufactured to Contract specifications.

41. The representations and concealments of facts by senior representatives of AI and AI-Daiwa were intentional, deceitful, made with the intent to deprive Apparent Inc of its legal rights, including its rights under the Contract, Addendum no.1, and without regard to the damage caused to Apparent Inc. The conduct was despicable, done with malice, oppression, and fraud entitling Apparent Inc to exemplary and punitive damages.

Wherefore, Apparent Inc prays for judgment and an award of damages as set forth below.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation as to AI and AI-Daiwa

42. Apparent Inc re-alleges and re-incorporates paragraphs 1-41 above as though fully stated herein.

43. On or about December 2011, Robert O'Donnell a Director of AI-Daiwa represented that AI-Daiwa would perform the issued purchase order consistently with the terms of the Contract. Mr. O'Donnell represented that AI-Daiwa would produce high quality products to Apparent Inc's specifications, would provide supply chain services, and would work on cost reductions as specified in the Contract. Mr. O'Donnell represented that AI-Daiwa had extensive resources and could support Apparent Inc's design and manufacturing process.

44. Mr. O'Donnell made these false representations without having any basis for believing them true and only made them to obtain the assignment of the purchase order to AI-Daiwa.

45. Apparent Inc relied upon Mr. O'Donnell's representations to assign the purchase order to AI-Daiwa and relied on AI-Daiwa to produce MGi devices –all to its detriment. Specifically, AI-Daiwa did not produce MGi devices in conformity with Apparent Inc's specifications or quality standards, delayed implementing remedial measures when root causes were identified, provided no supply chain services, and did not engage in cost reduction. AI-Daiwa refused to credit Apparent Inc for excess inventory used for the manufacturing process, for payments

made to AI. Ultimately, when Apparent Inc notified AI-Daiwa of the volume of defects, AI-Daiwa refused to engage.

46. On another occasion, on or about December of 2012, Apparent Inc requested a container shipment of MGi devices. Robert O'Donnell and Frederick Wan, directors of AI-Daiwa and officers of Daiwa agreed to deliver the container at an inflated cost, paying for the devices in advance and pay down any sums owing for goods and materials shipped. Due to the increase of defective products over the course of 2012, Apparent Inc requested that each MGi device be re-tested before shipment. Mr. O'Donnell agreed. In written and oral communications, Mr. O'Donnell, and others including James Chong, represented that each device had been re-tested and met Apparent Inc's specifications when they had no reason to believe the representations to be true. Rather, the representations were to induce Apparent Inc to pay an inflated sum for defective devices.

47. Apparent Inc relied upon the representations made by Mr. O'Donnell, Mr. Wan, and Mr. Chong, among others, paid the inflated sum and took delivery of the MGi devices. Upon receipt of the shipment, Apparent Inc discovered that a significant percentage of the shipment was defective and could not be used. The investigation revealed the defects were caused by poor workmanship and Apparent Inc requested that AI-Daiwa engage in remedial measures including testing by a third party. Upon conducting testing and identifying workmanship issues AI-Daiwa refused to further engage. Had Apparent Inc known of the true state of AI-Daiwa's performance, quality, or testing, AI-Daiwa's refusal to implement warranty and mass defect procedures, it would not have purchased the defective units.

48. The representations by AI and AI-Daiwa were intended to deprive Apparent Inc of its legal rights and without regard to the damage caused to Apparent Inc.

Wherefore, Apparent Inc prays for judgment and an award of damages as set forth below.

## SIXTH CAUSE OF ACTION

### Unfair Business Practices as to AI and AI-Daiwa

49. Apparent Inc re-alleges and re-incorporates paragraphs 1-48 above as though fully stated herein.

50. As is set forth more completely above, AI and AI-Daiwa breached the Contract and Addendum No. 1, committed fraud by intentional misrepresentations and concealment.

51. By engaging in unlawful and unfair conduct as set forth above, AI and AI-Daiwa are liable for disgorgement of profits unlawfully obtained.

Wherefore, Apparent Inc prays for judgment against AI and AI-Daiwa as set forth below.

## SEVENTH CAUSE OF ACTION

Unjust enrichment against AI and AI-Daiwa

52. Apparent Inc re-alleges and re-incorporates paragraphs 1-51 above as though fully stated herein.

53. AI and AI-Daiwa have been unjustly enriched by receipt of payments for MGi devices not manufactured to Apparent Inc's specifications. AI and AI-Daiwa obtained the payments for MGi devices by fraud, negligent misrepresentation or concealment. They breached the Contract and Addendum No. 1. To allow AI or AI-Daiwa to retain any sum paid for a defective device or to recover any sum for a defective device is unjust.

54. Wherefore, Apparent Inc seeks restitution of all sums unjustly received, and retained by AI and AI-Daiwa.

## EIGHTH CAUSE OF ACTION

Declaratory Relief as to AI and AI-Daiwa

55. Apparent Inc re-alleges and re-incorporates paragraphs 1-54 above as though fully stated herein.

56. Apparent Inc entered into the Contract with AI in July of 2011. Apparent Inc entered into the Addendum No. 1 in December of 2011 with AI and AI-Daiwa re-assigning a purchase order issued pursuant to the Contract to AI and AI-Daiwa. The Contract called for AI to provide manufacturing consistent with Apparent Inc's specifications and quality and testing standards at prices established by the Contract. The Contract specified returns, warranty, and mass defect provisions. The Contract specified pricing. The Addendum No. I required AI and AI-Daiwa to be bound by the terms of the Contract with regard to performance of the re-assigned purchase order. AI and AI-Daiwa failed to perform and instead obstructed the manufacturing process.

1    Ultimately AI and AI-Daiwa refused to perform the terms of the Contract, Addendum No. 1,

2    and re-assigned purchase order.

3    57. An actual controversy has arisen between Apparent Inc, AI and AI-Daiwa concerning each

4    party's rights and obligations under the Contract, Addendum No. 1, and assigned purchase

5    order. Apparent Inc requests a judicial determination of its rights and obligations and a

6    declaration of each party's rights. Specifically, Apparent Inc seeks a determination that AI

7    breached the Contract terminating Apparent Inc's obligations thereunder. Apparent Inc seeks a

8    determination that AI and AI-Daiwa breached the Contract and Addendum No. 1, warranting

9    the termination of the Contract and Addendum No.1 and warranting an offset and price

10   reduction against sums paid or owed. Apparent Inc seeks a determination that AI is required to

11   hold it harmless and indemnify it for AI-Daiwa's failure to perform obligations specified in the

12   Contract, Addendum No. 1, and assigned purchase order.

13   58. Apparent Inc will suffer detriment if it is required to pay for the inflated cost of products

14   manufactured not to its specifications. Apparent Inc cannot use the devices and will suffer

15   losses to its business resulting from the excessive costs unjustly paid to AI and AI-Daiwa.

16   Wherefore, Apparent Inc prays for judgment against AI and AI-Daiwa as set forth below.

17                                    **PRAYER FOR RELIEF**

18   Wherefore, Apparent Inc requests a jury trial and seeks judgment against Counter-defendants,

19   jointly and severally, as follows:

20   1. For Judgment entered in favor of Apparent Inc and Apparent Energy Inc and against AI

21      and AI-Daiwa;

22   2. For AI-Daiwa's claim for damages to be denied in its entirety or, alternatively, offset by

23      amounts owed to Apparent Inc and Apparent Energy Inc;

24   3. For an award of compensatory damages equal to the difference between the value of the

25      non-conforming goods delivered to Apparent Inc and the value of the goods represented

26      and warranted by AI and AI-Daiwa;

27   4. For all offsets and price reductions as permitted by applicable law for devices not

28      manufactured in conformity with Apparent Inc's specifications or quality standards,

including those offsets and price reductions permitted by Article 50 of CISG and/or section 2714 of the Cal. Commercial Code in an amount according to proof;

5. For an order affirming Apparent Inc's price reduction for the non-conforming goods and materials delivered to it by AI and AI-Daiwa in an amount to be proven at trial, but not less than $1million and for judgment in favor of Apparent Inc for reimbursement to it of that amount;

6. For disgorgement and restitution of sums paid for devices not manufactured in conformity with Apparent Inc's specifications or quality standards;

7. For compensatory damages according to proof;

8. For exemplary and punitive damages according to proof;

9. For pre-judgment interest at the maximum amount allowed by law, costs of suit and attorneys' fees pursuant to Contract and Civil Code section 1717;

10. For a determination of the parties' rights and  obligations pursuant to the Contract, the Addendum No. 1, and the re-issued purchase order;  and,

11. For such other and further relief as this Court deems just and proper.

Dated: May 19, 2014                          Desouza Law Offices
                                             A professional corporation

                                             By:_____/s/_____
                                             Jacqueline deSouza
                                             Attorneys of Record for Apparent Inc;
                                             Apparent Energy Inc; Apparent  Solar Inc;
                                             Xslent Energy Technologies, LLC;
                                             Apparent Solar Investments (II), LLC
                                             erroneously sued herein as Apparent Solar
                                             Investments, LLC