1  CHI-HUNG A. CHAN (SBN 104289)
   LAEL D. ANDARA (SBN 215416)
2  MICHAEL D. KANACH (271215)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  1001 Marshall Street, Suite 500
   Redwood City, CA 94063-2052
4  Telephone:     (650) 364-8200
   Facsimile:     (650) 780-1701
5  Email:         cchan@rmkb.com
                  blyle@rmkb.com
6
   Attorneys for Plaintiff
7  AI-DAIWA, LTD.

8

9                  UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12 AI-DAIWA, LTD.,                          CASE NO. CV13-4156 VC

13             Plaintiff,                   **REPLY TO DEFENDANTS' OPPOSITION
                                            TO PLAINTIFF'S MOTION TO DISMISS
14      v.                                  DEFENDANTS' AMENDED
                                            COUNTERCLAIMS**
15 APPARENT, INC., a Delaware
   Corporation; APPARENT ENERGY,            **Date:         July 10, 2014**
16 INC., a Delaware Corporation;            **Time:         1:30**
   APPARENT SOLAR, INC., a Delaware         **Courtroom:    4**
17 Corporation; APPARENT SOLAR
   INVESTMENTS, LLC, a Hawaii limited
18 liability company; XSLENT, LLC, a        **Complaint filed: September 9, 2013**
   Delaware limited liability company;
19 XSLENT ENERGY TECHNOLOGIES,
   LLC, a Delaware limited liability
20 company; and DOES 1-10 inclusive,

21             Defendants.

22 AND RELATED CROSS ACTION

23

24

25

26

27

28

RC1/7507115.2/RS                    - 1 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# I.

## INTRODUCTION

Apparent's Opposition argues that the fraud and negligent misrepresentation causes of action were plead with specificity in Apparent's First Amended Counterclaims (FACC). AI-Daiwa respectfully disagrees.  Apparent acknowledges that it has two separate fraud allegations in its FACC in addition to the negligent misrepresentation cause of action.  As set forth in AI-Daiwa's Motion to Dismiss, none of these allegations of fraud are plead with specificity under Fed.R.Civ.P. Rule 9(b) and all three fail to state a claim under Fed.R.Civ.P. Rule 12(b)(6).  Apparent's breach of warranty cause of action fails to state a claim because it fails to plead notice, under either the California Commercial Code (which Apparent's FACC states applies) or the UN CISG which allows the parties to enforce the contract's ten-day acceptance requirement for products that do not meet specifications.  The FACC provides absolutely no information regarding when notice was provided.  Finally, Apparent's breach of the implied covenant of good faith and fair dealing must be dismissed for failure to state a claim.

Most troubling about Apparent's FACC, is the conclusory nature of the allegations, which lack the factual specificity required to state a claim.  As set forth in AI-Daiwa's Request for Judicial Notice, the declarations and discovery responses are not offered for the truth of the matters asserted therein, but are offered to illustrate that Apparent has alleged facts in this case that contradict the conclusory allegations now in FACC.  Apparent is in the possession of information that should have been included in the FACC to meet the pleading standards or, as AI-Daiwa has attempted to illustrate, were omitted because they contradict the conclusory statements in the FACC.  See Fed.R.Civ.P. Rule 11.[1]  Apparent's conclusory allegations are essentially: if

---

[1] Fed.R.Civ.P. Rule 11 "imposes on any party who signs a pleading, motion, or other paper ... an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).  The Ninth Circuit has further explained:

> Sanctions should be imposed if (1) "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is [or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law" or if (2) "a pleading [or other paper] has been interposed for any improper purpose."

*Altmann v. Homestead Mortgage Income Fund*, 887 F. Supp. 2d 939, 955 (E.D. Cal. 2012), citing *Golden Eagle*

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    there was a breach of contract, there must be fraud.  If the Court finds that Apparent's allegations

2    as set forth in the FACC are sufficient to allege fraud, then every breach of contract would

3    amount to fraud based on the mere fact that a contract was breached.

## II.

## THE FRAUD CLAIM SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

6          "The failure to perform a contractual obligation is never a tort unless it constitutes a

7    failure to perform an independent legal duty." *Valenzuela v. ADT Security Servs., Inc.*, 820 F.

8    Supp. 2d 1061, 1071 (C.D. Cal. 2010); see also *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999).

9    Apparent does not allege a failure to perform an independent duty in either the FACC or the

10   Opposition. Apparent is still trying to reclassify a breach of contract cause of action into fraud.

11         First, with respect to the alleged representations made prior to entering into

12   Addendum One, when a fraud claim is based on a parties' alleged failure to comply with a

13   contractual duty, "the proper cause of action is breach of contract, not fraud." *Frontier*

14   *Contracting, Inc. v. Allen Eng'g Contractor, Inc.*, CV F 11-1590 LJO DLB, 2012 WL 485116

15   (E.D. Cal. Feb. 14, 2012) (citing *Auto Industries Supplier Employee Stock Ownership Plan*

16   *(ESOP) v. Snapp Systems, Inc.*, 2006 WL 3627935 at *5 (E.D.Mich., December 12, 2006) (No.

17   03–74357); see *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir.1993) (failure to

18   carry out a promise "does not constitute fraud unless, when the promise was made, the defendant

19   secretly intended not to perform or knew that he could not perform")).

20         Here, none of the alleged representations go beyond a promise to perform under the terms

21   of the contract.  For example, as Apparent states in its Opposition, "He [Mr. O'Donnell

22   represented that AI-Daiwa would perform the Contract consistently with its terms, produce high

23   quality products to Apparent's specifications and quality and testing standards, provide the supply

24   chain services (including component sourcing, cost reduction, design and accelerated life testing),

25   and engage in manufacturing cost reductions." (Docket No. 61, 5:10-13, citing Docket No. 55,

26   9:7-13 and 16:22-28.)  A promise to perform the terms of a contract is nothing more than a breach

27   *Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir.1986).

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
AMENDED COUNTERCLAIMS - CV13-4156 VC**

of contract.

Further, Apparent's FACC pleads that AI-Daiwa performed pursuant to the Agreement and Addendum by delivering products (e.g., Docket No. 55, 2:24-25, 3:4-5, 5:5-6). Apparent concedes that only a small portion of the devices allegedly failed including products that "stopped communicating after being installed," which means that the vast majority of the delivered devices work. (9:27-10:25). Apparent's FACC acknowledges several factors which evidence that AI-Daiwa performed under the contract or was excused from performance, including (a) Apparent failed to make timely payments, which were resolved during the reconciliation process (3:10-12), (b) AI-Daiwa provided offsets and credits (12:13-15), and (c) AI-Daiwa worked with Apparent to determine a root cause analysis and provided a remedial measures report in February of 2013 (10:9-13). Apparent acknowledges – in its FACC, Opposition, and discovery responses attached to the Request for Judicial Notice (Docket Nos. 58, 59-1, and 59-2) – that Apparent received offsets and credits from AI-Daiwa for the allegedly defective products. The foregoing allegations are inconsistent with Apparent's unsupported and conclusory allegations that AI-Daiwa could not perform and that AI-Daiwa knew it could not perform the contract prior to making any representations.

Apparent's conclusory allegations (e.g., "The promises, however, were false when made." 9:20-21), are not supported by any factual allegations in the FACC. The Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. See *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). See also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

Second, with respect to the alleged falsification of testing, Apparent has failed to allege with specificity how the alleged test results were allegedly falsified, except to conclude that they were. Apparent attempts to refute *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) for the proposition that it need not provide any more details with respect to the testing. In *SmithKline*, "Lee alleged that when test results for control samples fell outside the acceptable standard of error, SmithKline falsified the results and made no attempt to investigate

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS - CV13-4156 VC**

1   the source of the error, fix the problem, or retest the affected patient specimens." *Id.*, at 1050.  In

2   Lee's first amended complaint, Lee alleged that SmithKline "knowingly ... changed control

3   numbers [on various tests] to wrongfully represent that the laboratory results fell within an

4   acceptable standard of error." *Id.*, at 1051.  Apparent's allegations do not even provide that level

5   of factual allegation.

6          Although Apparent's FACC clarifies some of the inadequacies of the initial

7   Counterclaims (what test AI-Daiwa performed pursuant to the contract, what new tests AI-Daiwa

8   refused to perform, who made a statement regarding the test, when the statements were allegedly

9   made), Apparent's FACC still fails to allege how or in what manner the test or test results were or

10  could be falsified.  This is especially important in this case because Apparent is the one who

11  designed the devices and testing protocols.  As Apparent alleges in the FACC, the 2011

12  Protocols, required per the contract, were not sufficient to identify defective products.  The FACC

13  states, "Apparent Inc proposed a new stress test in addition to tests required by the Contract to be

14  conducted a third by a third party on the completed MGi products to identify defective

15  workmanship or components." (Docket No. 55, 12:4-6.)  The FACC next alleges that AI-Daiwa

16  refused to proceed with the new stress tests by a third party as a requirement before shipping

17  product because, "after running internal preliminary tests the new test confirmed the extent of the

18  alleged defects."   AI-Daiwa refused to perform this new stress test because it was not bargained

19  for in the agreement and Apparent was trying to enforce new testing requirements to resolve

20  issues which were not detectable from the 2011 Protocols.

21         Despite the fact that Apparent designed the devices and designed the testing protocols,

22  Apparent does not assert that it ever tested the devices itself using the same protocols.  Apparent

23  does not explain how the test results provided by AI-Daiwa were or could be falsified.  Apparent

24  simply concludes that a product that does not work must have falsified test results.  However,

25  Apparent fails to explain to the Court that AI-Daiwa could not anticipate whether a product was

26  "dead on arrival" or would not "communicate" using the old test.  As Apparent alleged, the 2011

27  Protocols included the "Apparent NPO Test Procedures," (See e.g., 18:12-13), a test which

28  Apparent designed and required AI-Daiwa to perform.  Throughout the FACC, Apparent fails to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7507115.2/RS                            - 4 -

1    explain why the 20011 Protocol was insufficient to determine the functionality of the devices or

2    adequately test for defective devices.  Apparent obfuscates why AI-Daiwa was required to

3    perform a <u>new</u> stress test, which was not bargained for during the contract negotiation, as a

4    prerequisite for delivery of product.  The new test, and AI-Daiwa's refusal to agree to it as a

5    condition of the agreement "after running internal preliminary tests and confirming to Apparent

6    the extent of the defects," is further evidence that Apparent's original test per the contract's 2011

7    Protocols failed to adequately detect defects – which is consistent with a design defect.

8         The Court, in granting Apparent's request for leave to amend, provided that "Defendants

9    will not be given any further opportunity to amend their answer to address issues raised by the

10   motion to dismiss." (Docket No. 52, 1:14-16.)  In assessing whether leave to amend is proper,

11   courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated

12   failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and

13   futility of the proposed amendment."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531,

14   538 (9th Cir.1989) (citations omitted).  These factors, however, are not given equal weight.

15   *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995). As discussed in the Introduction, above, the

16   extrinsic evidence attached to the Request for Judicial Notice illustrates statements inconsistent

17   with the conclusory statements. "Futility of amendment can, by itself, justify the denial of a

18   motion for leave to amend." *Id.*  Since Apparent's Amended Counterclaims fail to plead with the

19   fraud allegations with specificity, this cause of action must be dismissed without leave to amend.

20                                         **III.**

21   <u>**THE NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED**</u>
     <u>**WITHOUT LEAVE TO AMEND**</u>

22

23        Apparent argues that AI-Daiwa's Motion to Dismiss the fifth cause of action for negligent

     misrepresentation were waived because they were not made in the first cause of action.  This

24   argument fails for several reasons.

25        First, the arguments set forth in the Motion to Dismiss previously filed by Apparent

26   applied to both the fraud and negligent misrepresentation claims.  For example, AI-Daiwa states

27   in the previous Motion, "The allegations related to "falsification" of testing process fail to meet

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    the particularity requirements of Fed.R.Civ.P. Rule 9(b)." (Docket No. 46, 13:22-24; see also

2    11:10-11; 12:5-6).  As discussed above, Apparent's FACC fails to explain how the test was

3    falsified.

4         Second, Apparent requests leave to amend to address issues which Apparent contends

5    were not previously raised.  While Apparent tacitly acknowledges its failure to plead negligent

6    misrepresentation, Apparent fails to acknowledge that AI-Daiwa previously raised these specific

7    issues in the previous Motion to Dismiss.  Apparent argues that "[t]he initial Motion did not argue

8    the fraud cause of action was defective because Apparent **failed to describe how it was**

9    **falsified**."  (See Docket No. 61, 14:1-2.) (Emphasis added.)  This is not accurate. (See generally

10   Docket No. 46, 14:13-27.)  Apparent's previous Motion specifically argued, "It is entirely unclear

11   from the pleadings what 'testing' was performed or **what 'testing results' could have been**

12   **falsified** – or whether it would have been reasonable for Apparent to justifiably rely on the tests."

13   The Introduction paragraph ended with the following litany of missing allegations:  "Apparent,

14   again, fails to allege this cause of action with particularity, failing to allege when the statements

15   were made (in 2011, 2012, 2013?), **what tests were fraudulent, how they were falsified,**

16   whether the test was from the 2011 Protocols or the 2013 Protocols, and **other facts to support**

17   **any fraud allegation**." (Docket No. 46, 2:19-22.) (Emphasis added.)  As stated in the prior

18   Motion, "[u]nder Rule 9(b), the complaint must allege specific facts regarding the fraudulent

19   activity, such as the time, date, place, and content of the alleged fraudulent representation, **how or**

20   **why the representation was false or misleading**, and in some cases, the identity of the person

21   engaged in the fraud." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003);

22   *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997). (Docket No. 46, 10:18-22.) (Emphasis

23   added.)   Apparent failed to plead <u>how</u> these test results were or could be falsified, which affects

24   whether it would have been reasonable for Apparent to rely on the results of those tests.

25        Apparent states, "[t]he defense was not previously raised and Apparent received no notice

26   that it should be cured."  As shown above, Apparent was on notice of the failures in its pleading.

27   Yet Apparent failed to amend the negligent misrepresentation cause of action to cure this defect.

28   These allegations are not particular enough to satisfy Rule 9(b).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
AMENDED COUNTERCLAIMS - CV13-4156 VC**

Third, Apparent argues in its Opposition that AI-Daiwa waived its Motion to Dismiss the negligent misrepresentation cause of action because "Apparent did not charge any allegation in the cause of action for negligent misrepresentation." (Docket No. 61, 13:12-14.)  However, Apparent inserted 11 new paragraphs and two new causes of action above the negligent misrepresentation cause of action, each of which is realleged and reincorporated in the negligent misrepresentation cause of action.  (Docket No. 55, 19:13-14.)  In addition, eleven other paragraphs, specifically Paragraphs 8-18, have been substantially altered, many of which Apparent will use to support this cause of action.  Apparent's FACC includes many new factual statements and representations, many of which were aimed at resolving the aforementioned inadequacies in the fraud-based allegations.  This cause of action should be dismissed without leave to amend based on this Court's Order which granted leave to amend. (Docket No. 52, 1:14-16.)

## IV.

### THE BREACH OF WARRANTY CLAIMS SHOULD BE DISMISSED

**A.      California Law Applies, Per The FACC**

Apparent argues (in a footnote) that "AI-Daiwa concludes without any analysis that the California Commercial Code controls this action, ignoring any application of the UN Convention of the International Sale of Goods, which at Article 35 addresses warranties."  The footnote continues, "At a basic choice of law level AI-Daiwa's Motion to Dismiss is defective and should be denied."  This argument fails for two separate reasons.

First, Apparent's FACC specifically states that the written contract was "governed by California law.  (Docket No. 55, 13:8-9.)  The contract – which Apparent drafted – has a choice of law provision which provides that California law controls.  Further, Apparent's FACC's breach of warranty allegations specifically state that "California law imposes an implied warranty of merchantability."  (15:3-6.)  Similarly, Apparent's breach of the Implied Good Faith and Fair dealing cause of action is based on California law.

Second, as discussed below, under the UN CISG, the parties can agree to a shorter notice period than the default two-years.  Apparent failed to plead adequate notice, which is required

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7507115.2/RS

within ten days of delivery of the devices, per the Parties' Agreement.

**B.     Applying California Law, the FACC Fails to Plead Notice Within a Reasonable Time After Discovery**

In its Motion to Dismiss, AI-Daiwa set forth why the express and implied warranty claims under California law (Second Cause of Action) must be dismissed.  (e.g., Docket No. 57, 15:1-3.)  Apparent must plead when it gave notice.  As Apparent states in its Opposition, "[w]hat constitutes reasonable notice of a product defect depends on the circumstances of each case and upon evidence that is not before this Court."  (Docket No. 61, 12:2-3.)  Apparent is correct, but if Apparent does not make those allegations in its FACC, those "circumstances" are "not before this Court."  The FACC should identify each defective product received, the date the defect was identified, and the date and manner notice of the defect was provided to AI-Daiwa.  Apparent has this information within its custody and control and chose not to plead it in the FACC.  As such, the breach of warranty allegations must be dismissed for failure to state a claim.

**C.     Applying the CISG and the Contract's Ten Day Notice Period, the FACC Fails to Plead Notice Was Within Ten Days**

Although the FACC states that California law applies and the warranty claim arises under California law, Apparent's Opposition argues that AI-Daiwa's Motion to Dismiss applies the wrong law.  Even if Apparent properly alleged that the breach of warranty claims arise under the UN CISG, Apparent's FACC would fail to allege notice within a reasonable period of time.

Unless the parties agree to a shorter notice period in their agreement, the CISG's notice requirement is a default two-year period.  Here, the applicable notice period to which the parties agreed provides for a notice period of ten days after receipt.  Paragraph 9.3 of the Agreement, which is attached as Exhibit 1 to the DeSouza's Declaration (Docket No. 59-2), states that "Acceptance of the Product shall occur no later than ten (10) calendar days after receipt of Product by Apparent Energy."  This provision is directly applicable to the allegations in the FACC relating to breach of warranty, but glaringly absent.  This provision relates to "acceptance test procedure" which is "designed to demonstrate compliance with the Specifications."

"9.3     Delivery and Acceptance; Risk of Loss

b.       Apparent Energy shall have the right to inspect

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

deliveries of Products to identify any non-conformity with the Product's Specifications or an Order. Acceptance of the Product shall occur no later than ten (10) calendar days after receipt of Product by Apparent Energy and shall be based on non-conformity with the number of units ordered; with the specifications of labeling; or whether the Product passes an acceptance test procedure or inspection, which shall be mutually agreed upon by Apparent Energy and AI, designed to demonstrate compliance with the Specifications. Products shall be deemed accepted if not rejected within this 10-day period. Once a Product is accepted, all Product returns shall be handled in accordance with Schedule E (Warranty and Mass Returns).

Apparent Energy shall obtain an RMA number from AI to return Product that is not conformity with an Order. AI shall replace returned Product within 30 days from issuance of an RMA by delivering replacement Product to a site designated by Apparent Energy. In the event AI is unable to ship replacement Product within 30 days, Apparent Energy shall be entitled, within its sole discretion, to cancel that portion of an Order or apply the value of the defective Product against future Orders.

Pursuant to the terms of the agreement, Apparent failed to adequately plead notice within ten days. Schedule E of the Agreement, regarding warranty and mass returns, provides in pertinent part, "AI shall, at its option and at its expense, repair, replace or issue a credit for Product found defective during the Warranty Period." Apparent's FACC fails to allege that AI-Daiwa did not repair, replace or issue a credit for the allegedly defective products. This is because AI-Daiwa did issue credits, as set forth in AI-Daiwa's Motion to Dismiss. Apparent's FACC only alleges that credits were delayed. (Docket No. 55, 12:14-15.) Further, even if AI-Daiwa did not repair, replace, or issue a credit for allegedly defective products in compliance with Schedule E of the Agreement, that alleged failure would only support a breach of contract cause of action. This cause of action is simply another example of Apparent's attempts to make its breach of contract allegations into something more.

## V.

### THE BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM SHOULD BE DISMISSED

Apparent's Opposition simply repeats allegations from the FACC which specifically

- 9 -

1   support Apparent's breach of contract cause of action.  (Docket No. 61, 12:18-23, citing No. 55,

2   16:1-7.)  None of these arises to the level of breach of the implied covenant of good faith and fair

3   dealing.  Apparent specifically references the allegation that "AI and AI-Daiwa obstructed

4   returns, offsets, and payments and engaged in conduct with putative customers to interfere with

5   Apparent Inc.'s business opportunities."  The first half of that statement regarding offsets and

6   payments was resolved according to the FACC.  Further, the vague allegation that AI-Daiwa and

7   the other defendant "obstructed" these payments does not state a claim.  The second half of the

8   statement, alleging that AI-Daiwa and the other defendant vaguely "engaged in conduct"

9   [unsupported by any factual allegations] that interfered with unspecified "business opportunities,"

10  such allegations are not supported in the FACC by any factual allegations.  As discussed above,

11  "a wholly conclusory statement of [a] claim" will not survive a motion to dismiss.  *Twombly*, 550

12  U.S. 544, 561).  Therefore, this cause of action must be dismissed with leave to amend to the

13  extent Apparent can support these vague breach of contract allegations with factual support which

14  would support a claim for breach of the implied covenant of good faith and fair dealing.

**VI.**

**CONCLUSION**

17      For the foregoing reasons, AI-Daiwa respectfully requests the Motion to Dismiss be

18  granted with respect to the second, third, fourth, and fifth causes of action in the FACC.

Dated: June 25, 2014                    ROPERS, MAJESKI, KOHN & BENTLEY

By: _/s/ *Michael D. Kanach*
CHI-HUNG A. CHAN
LAEL D. ANDARA
MICHAEL D. KANACH
Attorneys for Plaintiff AI-DAIWA, LTD.

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*