JACQUELINE DESOUZA, State Bar No.:133686
DESOUZA LAW OFFICES, a professional corporation
1615 Hopkins Street
Berkeley, CA 94707
Tel/Fax: (510) 649-3420
Email: jdesouza@dlawcorp.com

Attorneys for Defendants
Apparent Inc; Apparent Energy Inc;
Apparent Solar Inc; Xslent Energy Technologies, LLC
Apparent Solar Investments (II), LLC (erroneously sued herein
as Apparent Solar Investments, LLC) and Counterclaimants
Apparent Inc and Apparent Energy Inc.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AI-DAIWA, LTD<br><br>        Plaintiff,<br><br>    vs.<br><br>APPARENT, INC., a Delaware corporation; APPARENT ENERGY, INC., a Delaware corporation; APPARENT SOLAR, INC., a Delaware Corporation; APPARENT SOLAR INVESTMENTS, LLC, a Hawaii limited liability company; XSLENT, LLC, a Delaware limited liability company; XSLENT ENERGY TECHNOLOGIES, LLC, a Delaware limited liability company; and DOES 1-10 inclusive,<br><br>        Defendants.<br>_____/<br><br>AND RELATED CROSS ACTION<br>_____/ | Case No. CV 13-04156 **(VC)**<br><br>DEFENDANT APPARENT INC's DISCOVERY LETTER SUBMITTED PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 37 and LOCAL RULE 37-1(A)<br><br>Complaint filed: September 9, 2013<br>First Amended Complaint filed: October 8, 2013 |

## I.  INTRODUCTION

This case involves a dispute over the cause of defects to products AI-Daiwa agreed to manufacture for Apparent Inc. AI-Daiwa claims that it is owed sums for products that Apparent asserts were not manufactured to its specifications and Apparent contends that it has overpaid for the products actually received. Despite the focus of the litigation, AI-Daiwa served discovery that not only stretched far beyond the claims or defenses asserted but sought to harass. For example, seeking all documents relating to payments made to Apparent Inc's counsel, Jacqueline deSouza, in her capacity as Corporate

Secretary. Based on the discovery tactics, Apparent sought a larger firm to assist with the litigation. On June 17th, Apparent advised AI-Daiwa that it was finalizing an association with O'Melveny & Myers. Apparent requested a continuance of its response to AI-Daiwa's Motion to Dismiss, the July 10th hearing date on the Motion and CMC scheduled for the same date as well as Mr. Matan's deposition. None of Apparent's requests were approved by AI-Daiwa. Instead, AI-Daiwa conducted a series of discovery strikes.

Three days later, on Friday June 20th, counsel sent a meet and confer letter with a discovery dispute letter pursuant to local rule 37-1(A) demanding a response by Monday June 23rd. Apparent objected stating that it would provide a response to the meet and confer by June 30th (one week later), which it did. Before 9 am on July 1st, AI-Daiwa asserted that no response had been provided on June 30th and it planned to file a discovery letter with the Court. Within minutes Apparent emailed a copy of the response. AI-Daiwa took less than 10 minutes to consider Apparent's attempt to address the discovery issues and demanded Apparent complete the joint discovery letter by noon on the same date (despite knowledge that Apparent's counsel was unavailable until the afternoon of July 1st). Upon receipt of AI-Daiwa's email demanding completion of the joint discovery letter, counsel advised that it could not be completed on July 1st, but would be emailed by noon on July 2nd. AI-Daiwa proceeded to file the joint discovery letter with the Court.[1]

As a result, Apparent submits this separate discovery letter. AI-Daiwa seeks this Court to resolve three issues: (1) the deposition of Stefan Matan, (2) Apparent's discovery responses related to the company's financial condition, and (3) Apparent's production in compliance with the ESI Order and Protective Order. (Docket no. 65.) Each is addressed in turn.

      A.    <u>Stefan Matan's Deposition.</u>

AI-Daiwa properly noticed Stefan Matan's deposition on two occasions: May 8th and June 18th. Both were rescheduled for good cause: on May 7th, Mr. Matan advised he was ill with a respiratory infection that prevented him from attending the deposition; on June 16th, counsel advised of O'Melveny & Myers' association into the action and sought the continuance to allow associating

---

[1] Pursuant to the Court's Standing Order, none of the email communication has been attached, but can be filed at the Court's request.

counsel to meet with Mr. Matan, learn the case, and attend the deposition. Despite the short time before Mr. Matan's deposition, the notice to counsel occurred as promptly upon O'Melveny & Myers' agreement to associate into the action as possible. Apparent offered a new date, August 12th, for Mr. Matan's deposition that was based on her knowledge of Mr. Matan's, Randy Edwards' (counsel whom Apparent anticipated assisting with the litigation[2]), and Ms. deSouza's schedules. (Mr. Matan is traveling with scheduled commitments the weeks of July 21st and August 4th; Mr. Edwards is unavailable the week of July 28th; and Ms. deSouza is unavailable the week of the 14th.) Apparent does not contest AI-Daiwa's right to depose Mr. Matan, but such right is not unlimited.

AI-Daiwa argues that there was no reason to continue Mr. Matan's deposition as Apparent's counsel represented he had produced all documents relevant to his notice of deposition. This argument ignores the right of Apparent to have associating counsel participate in Mr. Matan's deposition. Further, as is set forth below, AI-Daiwa objects to Apparent's production of documents and has demanded re-production as well as further production of documents. It is illogical to argue that Mr. Matan should be deposed with regard to documents that AI-Daiwa claims are inadmissible. Apparent has offered to re-produce all documents and complete the production of documents by July 21st. The delay to August for Mr. Matan for a date that works for his and Apparent counsels' schedules.

B.   Apparent's Financial Records.

AI-Daiwa seeks production of documents nos. 8 and 21 and response to request for admission no. 2. Request no. 8 demands the production of "all documents pertaining to the compensation provided by [Apparent Inc] to Jacqueline Desouza in her role as an officer of Apparent Inc., from December 2010 to present. Request for Admission no. 2 asks Apparent to admit that Jacqueline Desouza had an ownership interest in Apparent Inc on April 22, 2013. In response, Apparent objected to both the request for production and admission on grounds that the request for production is overly broad and that both the request for production and admission seek documents unrelated to any claim or defense asserted in this action. (Docket no. 65-1pp.17, 21,32.)

---

[2] Mr. Edwards was involved in a week-long arbitration the week of June 15th that extended well beyond the anticipated time.

Request no. 21 demands Apparent produce all <u>federal and state tax filings</u> from January of 2010 to the present. Apparent objected to the request on grounds it is vague, ambiguous, and overly broad; and, that it sought documents unrelated to any claim or defense raised in this action and sought confidential and proprietary information.

AI-Daiwa asserts, without any explanation, that Ms. deSouza's compensation as an officer and her ownership in Apparent, Inc and Apparent's tax returns are relevant to AI-Daiwa's demand for punitive damages. In a diversity action, such as this one, the right to financial information is determined by state substantive law (Fed.Rules of Evidence, rule 501) while the procedure for obtaining discovery is governed by federal law. (*Oakes v. Hamvorsen Marine Ltd.,* 179 F.R.D.281, 284 (CD CA 1998).) Relying on these rules, California substantive law precludes the discovery of financial information unless it is likely to lead to the discovery of admissible evidence and cannot be obtained through other means. (*Valley Bank of Nevada v. Superior Court,* 15 Cal.3d 652, 657 (1975).) AI-Daiwa offers nothing to establish that any payment to or ownership by Ms. deSouza has any relevance to a claim or defense. This is because AI-Daiwa's claim for punitive damages rests on alleged representations unrelated to Ms. deSouza. (Docket no. 5 ¶¶21-27.) Similarly, AI-Daiwa offers no explanation for how Apparent's tax returns are relevant or tailored to the claim for punitive damages. AI-Daiwa seeks tax returns filed since January 2010 to the present; but, AI-Daiwa became contracted to Apparent in December of 2011. (Docket no. 55 ¶11) AI-Daiwa's requests do not meet any state or federal standard for being 'narrowly circumscribed.' (see, *Ragge v. MCA/Universal Studios,* 165 FRD 601 605, citing *Cook v. Yellow Freight System, Inc* 132 FRD 548, 551(E.D.Cal. 1990.).)

C.  <u>Apparent's June 6th Production Of Documents</u>

Contrary to AI-Daiwa's claim in its papers filed with the Court, Apparent agreed in its June 30th response to AI-Daiwa to re-produce all documents previously produced ensuring that each document is stamped as stipulated, tying the production to its privilege log, and directly collecting ESI (to avoid producing forwarded email communication), by July 21st. Apparent's offer directly responded to AI-Daiwa objection to Apparent's production of emails with specific client information redacted but identified as redacted; 54 emails copied to counsel for production; and the lack of bates

and confidentiality identifiers on each page. These complaints indicate administrative errors not an attempt to subvert the production of documents, as alleged by AI-Daiwa.

What AI-Daiwa really seeks is to impose a financial burden on Apparent to retain a third party to collect and produce documents. In support of this demand, AI-Daiwa cites to cases where counsel improperly limited a production by the search terms used or where the self-collection of data limited a production. AI-Daiwa, however, offers nothing to indicate that Apparent's production is similarly defective. For example, among all the complaints raised by AI-Daiwa there are none stating that the production was limited as to time; did not include communication addressing an issue; or, did not include communication with any specific person. AI-Daiwa's demand for Apparent to incur the cost of a third party service is not supported.

Further, one of the reasons Apparent sought to associate a litigation team to assist with the litigation was to manage the demands made by AI-Daiwa's discovery, including the production of documents. The association of O'Melveny & Myers addresses AI-Daiwa's concerns about the production of documents. To require Apparent to incur additional costs of a third party in addition to a second litigation firm is unreasonable. (See, Fed. Rules Civ. Proc. Rule 26(1).)

## III. CONCLUSION

Apparent does not seek to avoid Mr. Matan's deposition or to produce documents consistent with the Federal Rules or the parties' stipulations. It proposes to produce Mr. Matan for deposition on August 12th or other date acceptable to all necessary attendees and to re-produce all documents as set forth above by July 21st.

Dated: June 25, 2014

Desouza Law Offices
A professional corporation

By:_____/s/Jacqueline deSouza_____
Jacqueline deSouza
Attorneys of Record for Defendants
Attorneys of Record for Defendants
Apparent Inc; Apparent Energy Inc;
Apparent Solar Inc; Xslent Energy
Technologies, LLC; Apparent Solar
Investments (II), LLC erroneously sued
herein as Apparent Solar Investment, LLC
and Counterclaimants Apparent Inc and
Apparent Energy Inc.