CHI-HUNG A. CHAN (SBN 104289)
LAEL D. ANDARA (SBN 215416)
MICHAEL D. KANACH (SBN 271215)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA  94063-2052
Telephone:     (650) 364-8200
Facsimile:     (650) 780-1701
Email:         cchan@rmkb.com
               landara@rmkb.com
               mkanach@rmkb.com

Attorneys for Plaintiff
AI-DAIWA, LTD.

JACQUELINE DESOUZA, (SBN 133686)
DESOUZA LAW OFFICES, PC
1615 HOPKINS STREET
BERKELEY, CA 94707
Tel: (510) 550-0010
Fax: (510) 649-3420
Email: jdesouza@dlawcorp.com

Attorneys for Defendants
APPARENT INC, APPARENT ENERGY INC.,
APPARENT SOLAR INC., AND XSLENT
ENERGY TECHNOLOGIES, LLC; APPARENT
SOLAR INVESTMENTS (II), LLC
ERRONEOUSLY SUED HEREIN AS APPARENT
SOLAR INVESTMENTS, LLC and Counter
claimants APPARENT INC and APPARENT
ENERGY INC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AI-DAIWA, LTD.,<br><br>             Plaintiff,<br><br>    v.<br><br>APPARENT, INC., a Delaware Corporation, et al.<br><br>             Defendants. | CASE NO.  CV13-4156 VC<br><br>**STIPULATION AND[ PROPOSED] ORDER RE COURT-APPOINTED EXPERT** |
| AND RELATED CROSS ACTION | |

# I.

## INTRODUCTION

On April 9, 2014, pursuant to the Honorable Yvonne Gonzalez Rogers order at the Initial Case Management Conference on April 7, 2014, the parties entered into a Stipulation Concerning Duties and Instructions for Court-Appointed Technical Expert.  The parties met and conferred to provide recommendations for (1) an expert to serve as a Joint Court Appointed Expert related to the solar power microgrid inverters or "MGi devices" (the "Products-at-Issue"), and (2) protocols and procedures for the expert's opinion related to the Products-at-Issue, including their design, manufacturing, and testing.  (Docket no. 43.) The Parties were unable to agree on an expert and the Court selected one of three proposed, Mark McNeely of Exponent. (Docket No. 54) On June 24, 2014, the Court granted a Stipulation and Order providing an additional 60-day extension to provide the Court-Appointed Expert with documents and things, **on or before August 23, 2014**. (Docket No. 63.)  On June 30, 2014, after the Parties requested logistics for delivery of AI-Daiwa's production of devices to McNeely, McNeely informed the Parties that he was unable to continue to act as the Court-Appointed Expert due to a change of employment and moving out of the state of California.  Mr. McNeely recommended a colleague at Exponent, John McNulty Ph.D. CRE, P.E. as a new Court Expert and the Parties stipulate to Dr. McNulty serving as the Court Expert pursuant to the protocols and procedures set forth in Docket no. 43.

# II.

## PROPOSED COURT EXPERT

Mark McNeely, P.E., CFEI, from Exponent was chosen as the Court-Appointed Expert. On June 30, 2014, McNeely informed the parties that he was unable to continue to perform his duties as the Court-Appointed Expert and proposed John McNulty Ph.D., CRE, P.E. to replace him.  Dr. McNulty is a Principal Engineer at Exponent.  Dr. McNulty's rates for this matter are $390.  Attached hereto as **Exhibit A** is the professional profile from the Exponent website for Dr. McNulty.  The Parties have agreed to Dr. McNulty. Attached as **Exhibit B** is Dr. McNulty's signed Acknowledgement to the Protective Order.

Plaintiff has confirmed that Dr. McNulty is amenable to discussing his qualifications with

the Court.  He can be contacted at (650) 688-7312.

**III.**

**STIPULATION OF THE PARTIES RELATING TO THE SCOPE OF JOINT TESTING**

The Parties by and through their counsel of record stipulated at the Initial Case Management Conference to joint testing by a Court-appointed expert. The Parties submit the following stipulation as to the standards and scope of joint testing.

**A.   STANDARDS**

The Federal Rules of Evidence allow a court to appoint an expert either "on its own motion or on the motion of any party." Fed. R. Evid. 706(a).  Rule 706(a) provides:

> The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection … A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate.  A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party.   The witness shall be subject to cross-examination by each party, including a party calling the witness.. . .The Court may authorize the disclosure to the jury that the court appointed the expert and this rule does not limit a party in calling its own experts.

**B   PROPOSED ORDER OF APPOINTMENT**

Based on the Parties consent at the April 7th Case Management Conference, the Court appoints an expert as a "Court Expert" under the following terms:

1.      The Court Expert shall serve as a neutral, independent expert  regarding the following: (a) whether the MGi delivered by AI-Daiwa to Apparent  met the specifications and testing the Parties agreed to under the Agreement at issue, the November 15, 2011 "Test Plan for Apparent System REV D," or any subsequently agreed-upon quality and testing standards; and, (b) Identify the extent and basis of the MGi failures that Defendants have attributed to manufacturing defects and AI-Daiwa has attributed to improper design, including selection of component(s).

2.      The Court Expert's duties shall include the following: (a) to develop, with input

from both parties, a process to complete the steps identified in paragraph 1; (b) conduct testing to complete the steps identified in paragraph 1; (c) to prepare a report to document the testing procedure, the tests performed, and the results of the tests; (d) submit to deposition and provide testimony at court; (e) provide a basic tutorial to the Court and the jury on the underlying technology at issue in the case related to the Products-at-Issue; (f) to provide a tutorial, expert analysis and opinions as to the operation of the Products-at-Issue; and (g) to provide expert analysis and opinions as to the technical issues in this case regarding the operability of the Products-at-Issue.

3. The Parties will provide the Court Expert with Materials as described in paragraph 4 as the Court Expert may require for the use in forming his/her opinions. The materials will be provided to the Court Expert **on or before August 23, 2014, per Docket No. 63**. Other materials will be provided on a rolling basis as they are required by the expert and/or become available during the course of the litigation. The Court Expert is not limited to these materials, and may request additional information that he/she believes is necessary.

4. Materials

a. The following Materials shall be provided to the Court Expert **on or before August 23, 2014, per Docket No. 63**:

(i) Apparent shall provide 10 samples of delivered MGi devices that do not operate and that were not previously used or sold by Apparent, or otherwise modified by Apparent; and 10 samples of MGi devices that failed in the field;

(ii) AI and AI-Daiwa shall provide 10 samples of MGi devices produced in the period 2011-2012 and have completed the required testing but have not been delivered to Apparent;

(ii) A Bill of Materials use for the manufacture of the MGi devices;

(iii) Specification sheets for manufacture of the MGi devices;

(iv) The Supply Chain Agreement, Addendum, and Quality and Testing Standards provided to AI and AI-Daiwa for the manufacture of the MGi devices;

5. The Parties shall meet and confer to determine what additional information to

provide the Court Expert.  If the Parties disagree about the propriety of providing a certain document or thing to the Court Expert, and the Parties cannot resolve the dispute through a meet and confer, the Parties will seek the Court's assistance, and neither party shall provide that document or thing to the Court Expert until and unless the Court has resolved the issue.

6.     The Court Expert may look to the expert reports and the deposition transcripts of the Parties' experts for guidance as to what the experts and the Parties believe are the key issues to be address in this case.  His/her conclusions are to be his/her own independent opinions.

7.     The Court reserves the right to have informal verbal communications with the Technical Expert which are not included in any formal written report.

8.     In determining the testing procedures, the Court Expert shall engage both Parties but shall retain his/her sole discretion as to how to proceed. All testing shall be videotaped and, subject to the Court Expert's consent, each Party shall be entitled to observe testing but not participate in any step, discussion, or procedure related to testing.

9.     After concluding all testing and reviewing material submitted to him/her, the Court Expert will provide a written report describing the testing procedures, the results of the tests, and the expert's conclusions, a copy of which shall be provided to the Court and the Parties.  The Court Expert's report should be sent to the Parties by express mail within 30 days of completing testing and reviewing all submitted material.   Within twenty-one (21) days of the submission of the expert report, the Parties may ask the Court Expert to appear for a deposition at a time and location that is convenient.  At the deposition, the Parties can ask the Court Expert questions, and he/she will be given the opportunity to explain his/her opinions in greater detail prior to his/her testimony at trial.  Each Party may depose the Court Expert for up to seven (7) hours.

10.     **In the Court Expert's Report:**

- The Court Expert Report shall describe the test procedures, materials reviewed and relied upon, testing and test results, and identify and explain any conclusions reached by the Court Expert regarding

  o  The existence of any defect in the manufactured MGi

STIPULATION AND[ PROPOSED] ORDER RE
COURT-APPOINTED EXPERT
CV13-4156 VC

o   The cause of any defect identified in the MGi

o   Whether the MGi was manufactured to Apparent's specifications

o   Whether the operability of any component on Apparent's Bill of Materials contributed to the defect or defects

11.   The Court Expert will testify at trial on his/her opinions.

12.   In order to accept this appointment, the Court Expert must give his/her consent to serve as the Court-appointed expert in this case and declare that he/she will adhere to the terms of his appointment, by signing below and returning the signed original to the Court in the enclosed envelope.

13.   The Court Expert must also confirm that he/she has no conflicts of interest.

14.   Upon the Court Expert's consent and the Court's appointment, the Parties will retain the Court Expert.  The costs of the Court Expert shall be borne equally by AI-Daiwa, Apparent Inc, and Advanced Innovations. Within ten (10) days of the appointment, the Court Expert shall provide an estimate of the cost of this assignment and shall specify a retainer against which fees and costs shall be billed. The parties shall deposit their share of the costs of the Court Expert within 10 days of receipt of the retainer. The retainer shall be supplemented as designated by the Court Expert, subject to a Party's right to request that the Court review and adjust any fees and costs.

15.   The Technical Expert shall report to the Court on a periodic basis, every sixty (60) days, regarding the state of his fees and expenses and make a recommendation to the Court as to whether the trust account needs additional deposits from the parties as the case progresses. All matters pertaining to the fees of the Technical Expert are referred to the assigned Judge.

///

///

///

///

///

- 6 -

1

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD, AS TO SECTION III.

2

DATED: _____7/15/2014_____    ____/Lael D. Andara/_____

3

Attorneys for Plaintiff

4

5

DATED: _____7/15/2014_____    ____/Jacqueline deSouza/_____

Attorneys for Defendants

6

7

PURSUANT TO STIPULATION AS SET FORTH IN SECTION III, AND COURT ORDER

8

UPON GOOD CAUSE, IT IS SO ORDERED AS FOLLOWS:

9

The Court appoints **Dr. John McNulty** of Exponent as the Court appointed expert to perform the

10

scope of joint testing stipulated to by the Parties.

11

12

Dated:

13

14

_____

Honorable Vince Chhabria
United States District Court Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND[ PROPOSED] ORDER RE
COURT-APPOINTED EXPERT
CV13-4156 VC

# EXHIBIT A

E$^x$ponent®
*Failure Analysis Associates*®

Exponent
149 Commonwealth Drive
Menlo Park, CA 94025

telephone 650-326-9400
facsimile 650-326-8072
www.exponent.com

## John McNulty, Ph.D., CRE, P.E.
**Principal Engineer**

### Professional Profile

Dr. McNulty's areas of specialization include fracture mechanics and fatigue of materials (metals, glasses, ceramics, and composites), materials characterization techniques, mechanical testing, reliability testing and analysis (Telcordia, MIL-STD, and IPC/JEDEC standards), hybrid hermetic packaging (terrestrial and space), failure analysis of components and systems (biomedical implants, structural materials, MEMS, ceramic capacitors, lasers, detectors, electricity & gas meters, solar panel junction boxes & inverters), Pb-based and Pb-free printed circuit board assembly issues (solder fracture and fatigue, solder selection and processing, BGA/flip chip underfills, temperature and moisture sensitive components, tin whiskers, and solderability platings), supplier intervention, corrective action development, and consumer product safety recalls. He has performed supplier reliability audits on behalf of domestic and foreign OEMs in the US, China, Japan, and Taiwan. He chairs the iNEMI working group on defining reliability requirements for implantable medical electronic devices.

Prior to joining Exponent, Dr. McNulty consulted individually and as an employee of DfR Solutions (2007–2009). He provided engineering services with respect to product and process development, reliability, and failure analysis for clients in the telecommunications, defense (submarine, terrestrial, and space), industrial controls, test and measurement, commercial laser, biomedical, and consumer electronics/opto-electronics industries, and provided training on these services both on-site and at professional seminars and conferences.

Dr. McNulty was also employed in product development and reliability management roles for telecommunication component suppliers as well as a commercial laser component and system supplier (2000–2007). Products included optical switches, MEMS-based components (attenuators, dynamic gain & channel equalizers, tunable lasers, tunable filters & receivers), packaged and unpackaged laser diodes, and diode-pumped laser systems. In these positions, he was responsible for hybrid packaging development and qualification of devices with respect to industry and commercial standards, as well as management of failure analysis, corrective action development, and warranty/recall issues. He was a committee member for the revision of Telcordia standard GR-468-CORE (active devices).

### Academic Credentials and Professional Honors

Ph.D., Materials Engineering, University of California, Santa Barbara, 1997
B.S., Materials Science and Engineering, University of California, Berkeley, 1990

ASM International, Undergraduate Paper of the Year, 1990

**Licenses and Certifications**

Licensed Professional Mechanical Engineer, Washington, #50600
Certified Reliability Engineer, American Society of Quality, #7547

**Professional Experience**

- Chair:  Defining Reliability Requirements for Implantable Medical Electronics, iNEMI, 2011–present
- West Coast Office Manager and Senior Member of Technical Staff, DfR Solutions, LLC, 2007–2009
- Sole Proprietor, J.C. McNulty Consulting, LLC, 2007–2008
- Manager of Reliability, Semiconductor Business Unit, Coherent, Inc., 2005–2007
- Director of Reliability, Iolon, Inc., 2001–2005
- Product Development Engineer, Optical Switch Corporation, 2000–2001
- Staff Research Engineer, Materials Department, UC Santa Barbara, 1997–2000
- Associate Engineer, Baxter Healthcare Corporation, 1991–1992
- Research Assistant, Lawrence Berkeley National Labs, 1989–1991

**Publications**

He MY, Singh D, McNulty JC, Zok FW.  Thermal expansion of unidirectional and cross-ply fibrous monoliths.  Composites Science and Technology 2002; 62(7–8):967–976.

McNulty JC, He MY, Zok FW.  Notch sensitivity of fatigue life in a Sylramic/SiC composite at elevated temperatures.  Composites Science and Technology 2001; 61(9):1331–1338.

McNulty JC, Begley MR, Zok FW.  In-plane fracture resistance of a crossply fibrous monolith. Journal of the American Ceramic Society 2001; 84(2):367–375.

Singh D, Cruse TA, Hermanson DJ, Goretta KC, Zok FW, McNulty JC.  Mechanical response of cross-ply Si3N4/BN fibrous monoliths under uniaxial and biaxial loading.  Ceramic Engineering and Science Proceedings 2000; 21(3):597–604.

McNulty JC, Zok FW, Genin GM, Evans AG.  Notch-sensitivity of fiber-reinforced ceramic-matrix composites: effects of inelastic straining and volume-dependent strength.  Journal of the American Ceramic Society 1999; 82(5):1217–1228.

McNulty JC, Zok FW.  Low-cycle fatigue of Nicalon-fiber-reinforced ceramic composites. Composites Science and Technology 1999; 51(10):1597–1607.

McNulty JC, Zok FW.  Application of weakest-link fracture statistics to fiber-reinforced ceramic-matrix composites.  Journal of the American Ceramic Society 1997; 80(6):1535–1543.

Walls DR, McNulty JC, Zok FW.  Multiple matrix cracking in a fiber-reinforced titanium matrix composite under high-cycle fatigue.  Metallurgical and Materials Transactions A 1996;



27(7):1899–1908.

Heredia FE, McNulty JC, Zok FW, Evans AG.  Oxidation embrittlement probe for ceramic-matrix composites.  Journal of the American Ceramic Society 1995; 78(8):2097–2100.

Venkateswara Rao KT, McNulty JC, Ritchie RO.  The effects of prolonged thermal exposure on the fracture and fatigue behavior of aluminum-lithium alloy 8090.  Metallurgical Transactions A 1993; 24(10):2233–2239.

**Book Chapters**

Ramamurty U, McNulty JC, Steen M. Fatigue in ceramic matrix composites.  In: Comprehensive Composite Materials, Elsevier Science, 2000.

**Conference Proceedings**

McNulty JC.  Processing and reliability issues for eutectic AuSn solder joints.  Proceedings, 41st International Symposium on Microelectronics (IMAPS 2008), Providence, RI, 2008.

McNulty JC.  A perspective on the reliability of MEMS-based components for telecommunications.  Proceedings, SPIE, Vol. 6884, 2008.

Schleuning D, Griffin M, James P, McNulty J, Mendoza D, Morales J, Nabors D, Peters M, Zhou H, Reed M.  Robust hard-solder packaging of conduction cooled laser diode bars. Proceedings, SPIE, Vol. 6456, 2007.

Rosenberg P, Reichert P, Du J, Fouksman M, Zhou H, McNulty J, Tolman S, Luong C.  Highly reliable hard-soldered 1.6 kW QCW laser diode stack packaging platform.  Proceedings, SPIE, Vol. 6456, 2007.

**Presentations**

McNulty JC, Huang R.  Failure analysis of electronic packaging.  ASME Professional Development Seminar, Sunnyvale, CA, 2014.

McNulty JC.  Assessment of reliability standards for implantable medical devices.  AMI Medical Polymers Conference, Woburn, MA, 2013.

McNulty JC.  Failure analysis of Pb-free electronics.  Professional development course, IPC-JEDEC Conference, San Jose, CA, 2009.

McNulty JC.  Processing and reliability issues for eutectic AuSn solder joints.  IMAPS Conference, Providence, RI, 2008.

McNulty JC, Hillman CD.  Current customer concerns regarding the reliability of solid state drives.  IDEMA Reliability Symposium, San Jose, CA, 2008.



McNulty JC.  A perspective on the reliability of MEMS-based components for telecommunications.  SPIE-Photonics West Conference, San Jose, CA, 2008.

**Professional Affiliations**

- ASM (member)
- ASME (member)
- IEEE (member)
- iNEMI (member)
- SPIE (member)

# EXHIBIT B

**EXHIBIT A**

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _JOHN CLARK MCNULTY_ [print or type full name], of _199 Commonwealth Drive, Menlo Park, CA 94025_

[print or type full address], declare **_under penalty of perjury_** that I have read in its entirety and

understand the Stipulated Protective Order that was issued by the United States District Court for

the Northern District of California on [date] in the case of *AI-Daiwa LTD. v. Apparent Inc., et al.,*

Case No. 13CV4156YGR.

   I agree to comply with and to be bound by all the terms of this Stipulated Protective

Order and I understand and acknowledge that failure to so comply could expose me to sanctions

and punishment in the nature of contempt.

   I solemnly promise that I will not disclose in any manner any information or item that is

subject to this Stipulated Protective Order to any person or entity except in strict compliance with

the provisions of this Order.

   I further agree to submit to the jurisdiction of the United States District Court for the

Northern District of California for the purpose of enforcing the terms of this Stipulated Protective

Order, even if such enforcement proceedings occur after termination of this action.

   I hereby appoint _JAMES JOSEPH FICENEC_ [print or type full name] of

_2033 North Main Street, Suite 800,_

_Walnut Creek, CA 94596, (925) 930-6600_ [print or type full address and telephone

number] as my California agent for service of process in connection with this action or any

proceedings related to enforcement of this Stipulated Protective Order.



Date: _JULY 3RD_ , _____, 20 _14_

Sworn and Signed in City _SAN FRANCISCO_
and State _CA_

Printed name: _JOHN CLARK MCNULTY_
     [*printed name*]

Signature: _____
     [*signature*]

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City