UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AI-DAIWA, LTD.,<br>    Plaintiff,<br>    v.<br>APPARENT, INC., et al.,<br>    Defendants. | Case No.  13-cv-04156-VC<br><br>**ORDER GRANTING APPARENT'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 154 |

Intentional misrepresentation and negligent misrepresentation

In July 2011, Advanced Innovations (AI) and Apparent entered into a supply chain services agreement under which AI agreed to manufacture an Apparent-designed product, the MGI220 solar micro-grid inverter. Several months later, in December 2011, at AI's request, Apparent entered into an addendum to the agreement with AI-Daiwa, a newly-formed joint venture that AI had formed with Daiwa. Under the addendum, AI-Daiwa agreed to manufacture 47,000 micro-grid inverters for Apparent. Over the next several months, many problems arose. AI-Daiwa then brought this lawsuit, contending that Apparent failed to pay AI-Daiwa for the products it delivered, and Apparent counterclaimed, contending that AI-Daiwa delivered faulty products that suffered from a manufacturing defect.

The lawsuit is primarily a breach of contract action. But in its First Amended Complaint, AI-Daiwa included claims for intentional and negligent misrepresentation, alleging that Apparent entered into the December 2011 agreement without any intent to actually pay AI-Daiwa or to abide by the terms of the agreement. More specifically, AI-Daiwa alleges that Dan Tran, the vice president of manufacturing at Apparent, fraudulently induced AI-Daiwa to enter the agreement by concealing from AI-Daiwa the fact that Apparent never planned to pay for the inverters. FAC ¶

22-24, 29-32.

Apparent has now moved for summary judgment on AI-Daiwa's claims for intentional and negligent misrepresentation. As Apparent points out, the undisputed facts show that Apparent has paid AI-Daiwa over $800,000 for a portion of the delivered products, that the two parties engaged in extensive conversations over many months about how to remedy the defects and other contract issues, and that even AI-Daiwa's director, Robert O'Donnell, believed that Apparent intended to pay for the inverters at the time Apparent entered into the agreement with AI-Daiwa. Based on these undisputed facts, no reasonable juror could conclude that Apparent never intended to abide by its agreement with AI-Daiwa. *See Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230, 162 Cal. Rptr. 3d 864, 875 (2013) (identifying the elements of intentional and negligent misrepresentation). What's more, rather than pointing to any evidence that might suggest otherwise, AI-Daiwa primarily argues in its opposition brief that its complaint alleges fraud with sufficient particularity. But this is a motion for summary judgment, not a motion to dismiss, so AI-Daiwa's burden is to come forward with evidence that speaks to Apparent's alleged fraud in inducing AI-Daiwa to enter into the agreement. The only evidence AI-Daiwa points to goes to whether Apparent made misrepresentations about potential customers during the course of its ongoing negotiations with AI-Daiwa, not to the question of any potential misrepresentation at the time the parties entered into the agreement. Accordingly, because there is no genuine issue of fact on whether Apparent entered into the agreement without any intent to pay or to abide by its terms, Apparent's motion for summary judgment on AI-Daiwa's intentional and negligent misrepresentation claims is granted.

Apparent Entities

AI-Daiwa sued Apparent, Inc., and four of its subsidiaries: (1) Apparent Energy, Inc., (2) Apparent Solar, Inc., (3) Apparent Solar Investments (II), LLC, and (4) Xslent Energy Technologies, LLC. But only two of the five entities – Apparent, Inc., and Apparent Energy, Inc. – are parties to the agreement with AI-Daiwa, so Apparent has moved for summary judgment on all claims against the other three entities.

AI-Daiwa contends that even though the three subsidiaries are not parties to the agreement, the Court should deny summary judgment under an alter ego theory. Under California law,[1] alter ego liability exists only if (1) there is such a unity of interest and ownership between the parent and subsidiary that their separate personalities no longer exist, and (2) an inequitable result would otherwise occur. *See, e.g.*, *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538, 99 Cal. Rptr. 2d 824 (2000); *M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1489 (9th Cir. 1983). While AI-Daiwa has perhaps raised a triable issue of fact as to the first part of the test (indeed, the relationship among the entities seems quite sketchy), it has offered no evidence as to the second. Instead, AI-Daiwa makes the conclusory assertion that, should a judgment be rendered against Apparent, Inc., it could then transfer its assets to its subsidiaries. But this could be asserted in any case where a defendant corporation has parents or subsidiaries, and it does not create a genuine issue of fact. (And measures can be taken when a defendant attempts to hide assets to avoid the consequences of a judgment.) Because AI-Daiwa has not pointed to any evidence for why extending alter ego liability to the subsidiaries is necessary to prevent injustice, summary judgment is granted for the three Apparent entities.

**IT IS SO ORDERED.**

Dated: August 31, 2015

VINCE CHHABRIA
United States District Judge

---

[1] The parties have made no mention of what law applies for the alter ego claim, but the Court assumes it is California law, as indicated in the services agreement between AI-Daiwa and Apparent.

3