UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AI-DAIWA, LTD.,

    Plaintiff,

    v.

APPARENT, INC., et al.,

    Defendants.

Case No.   13-cv-04156-VC

**ORDER GRANTING AI-DAIWA'S MOTION TO STRIKE**

Re: Dkt. No. 162

    AI-Daiwa's motion to strike the rebuttal expert report of Rosemary Coates is granted.  AI-Daiwa's primary complaint is that Ms. Coates' report does not actually rebut the report of Devinder Grewal, AI-Daiwa's technical expert, and therefore Apparent's disclosure of Rosemary Coates is untimely, because she should have been disclosed as a primary expert by the Court-imposed deadline of June 29, 2015, rather than as a rebuttal expert one month later, on July 29, 2015.  This seems correct, because Dr. Grewal, who is a mechanical engineer, focused most of his report on the technical aspects of the microgrid inverters at issue in this case, describing the various laboratory tests that he ran on the inverters.  Ms. Coates, by contrast, has no technical background, and her rebuttal report offered no technical discussion about the inverters.

    But Ms. Coates' proposed testimony is inadmissible for a more fundamental reason as well.  Under Federal Rule of Evidence 702, a qualified expert witness may testify if the following conditions are met:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> (d) the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702.  A district judge has a basic gatekeeping function to "to ensure that any and all scientific testimony . . . is not only relevant, but reliable," *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589, (1993) and the same is true with respect to non-scientific expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The Court's job is to determine "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline," *Estate of Barbarin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (internal citations omitted), which the Court may do by considering several factors, including the following: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States f. Hankey,* 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert*, 509 U.S. at 592-94). But ultimately the Court has broad discretion and flexibility in assessing an expert's reliability. *Estate of Barbarin*, 740 F.3d at 463.

Here, regardless of what factors the Court considers, it is impossible to say that Ms. Coates' testimony is reliable, because it is unclear what methods or principles or data she is applying to the facts of the case. Ms. Coates is an expert in global supply chains and, in particular, in sourcing and manufacturing in China. Her expert report indicates that she has "been asked to explain the practices and processes that business engage in, when selecting and using supply chain partners and outsourced contract manufacturers [and] . . . to opine specifically on the business practices and responsibilities for testing when using a contract manufacturer." ¶ 11-12. But rather than providing any detailed discussion of what these standards are and how they relate to the relationship between Apparent and AI-Daiwa, her rebuttal report consists mostly of a rehashing of Apparent's version of events, of statements for which there is no reason an expert would be needed, and of broad conclusions about how Apparent followed generally-accepted business practices for this type of contract. ¶¶ 17- 20, 22-23, 27-31, 36-40.

Even the two potentially relevant areas where her report seems to build off her expertise are lacking the information the court would need to determine their reliability. First, Ms. Coates' report includes a lengthy quote describing the "Stage-Gate System," which, according to her, is a process that "allows for incremental development steps to assure that the product being developed meets internal and external requirements" and "is a standard approach in engineering and is widely

2

adopted across industries." ¶ 32, 34. But rather than applying each of the steps of the Stage-Gate System to Apparent's product development, Ms. Coates simply concludes that because Apparent allegedly follows the Stage-Gate process, then, almost by definition, the defects in the microgrid inverters must have been the fault and responsibility of AI-Daiwa. Without any real analysis by Ms. Coates, the Court cannot assess whether she reliably applied the Stage-Gate process to the facts of the case.

Second, Ms. Coates opines that it is standard industry practice for the manufacturer of a device to be responsible for testing. Paragraph 24 of her expert report states as follows:

> The Expert Report of Devinder Grewal (Fathom Engineering), wrongly draws conclusions regarding the expectations for outsourced contract manufacturing. Through outsourcing to a contract manufacturer, companies routinely identify requirements for passing test specifications but hand-off the responsibility for developing and implementing testing of the product to the contract manufacturer and manufacturing site. This is what occurred here. Mr. Grewall's conclusions about the test processes focuses on the failure causes of products. Identifying these failures is the responsibility of AI-Daiwa, as specified in the contract between Apparent and AI and as incorporated in Addendum no. 1.

¶ 24. Ms. Coates acknowledges that, in this case, the responsibility for testing the microgrid inverters is identified in the agreement between AI-Daiwa and Apparent, so it is unclear why routine industry practice is relevant. And to the extent that Ms. Coates is suggesting that AI-Daiwa is necessarily responsible for testing because the norm in the industry is for the manufacturer to be responsible, such a conclusion is obviously incorrect.

For these reasons, AI-Daiwa's motion to strike Rosemary Cotes as an expert witness is granted.

**IT IS SO ORDERED.**

Dated: September 8, 2015

_____
VINCE CHHABRIA
United States District Judge